HEBER BISHOP *vs.* JOURNAL NEWSPAPER COMPANY.

Suffolk.    November 18, 19, 1896. — May 20, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Libel — Damages — Law and Fact — Instructions.*

An article in a city newspaper contained a picture of B., a practising physician, together with a sensational title and head lines, and the statement, copied from a newspaper published in another city, that B., one of the organizers of a certain social club, "had also succumbed to the enticing charms of Caterer C.'s pretty wife, and that, as a result, Mrs. B. was about to bring proceedings for a divorce, in which she would name the pretty Mrs. C. as co-respondent."  This was followed by an account of separate interviews with B. and his wife, in which each denied the truth of the story, and concluded with a tribute to B.'s professional and social standing in the community.  *Held*, in an action by B. against the publisher of the newspaper, that the article was libellous.

The fact that a libel may not be believed does not excuse the person who publishes it, nor deprive the plaintiff, in an action for its publication, of all except nominal damages; but it is for the jury to determine the damages.

Whether the natural consequences of the publication of a libel are of a character to entitle the plaintiff, in an action therefor, to substantial damages or only to nominal damages, is for the jury to decide.

The defendant in an action for libel is not entitled to a ruling that, "if the jury find that the article taken as a whole injured the plaintiff in his feelings and character, but find that the injury was slight, they may award nominal damages; and if they find that the defendant has only just overstepped the line, and that the action should not have been brought, then the damages must be nominal."

At the trial of an action by B., a physician, for libel, the judge instructed the jury upon the question of damages, among other things, as follows: "Now I think this is a good case to submit to twelve men in Suffolk County, to say what damages a plaintiff shall have who has been treated as Dr. B. has.  Has he been injured, or has the defendant pursued a proper and justifiable course in which to treat a citizen who is a man of good character, and where the defendant does not set up the truth? . . . You are to take into consideration that the defendant had published what was published in N. Y., that the article was not true, so that when the defendant published this article it had not only the fact that

Mrs. B., but that Dr. B. also, denied that there was any truth in that accusation. But still the defendant published it with their denial." *Held*, that the instructions did not tend unduly to bias and influence the jury.

Tort, for publishing " a false and malicious libel of and concerning the plaintiff," consisting of an article in the Boston Journal, published by the defendant on February 12, 1894, which contained a picture of the plaintiff, and was entitled " All by the Ears," and had the following head-lines: " Pretty Mrs. Howe upsets Megantic Club, — Dr. Heber Bishop indignant at what he hears in New York." The article began as follows: " There is a good-sized earthquake on in the Megantic Fish and Game Club. The first volcanic outburst occurred in New York on Saturday while Dr. Heber Bishop, of Boston, the president of the club in '93, was calling upon his friend and fellow clubman, Mr. Frederick L. Gilbert, at the latter's home in West Thirty-Fourth Street. And this was the cause of it all, as the story comes from Manhattan."

The article then stated that, while the plaintiff was breakfasting with Gilbert, the latter entertained him with an account of an action brought by the club's caterer, one Howe, against their mutual friend, one Woodruff, a former president of the club, for alienation of the affections of Mrs. Howe.

Then followed this statement: " The doctor, being well acquainted with all the parties to the suit, was very much interested in the discussion, and the morning papers were sent for. Dr. Bishop had not read very far when he dropped the paper with a gasp. Staring him in the face in cold type was a statement to the effect that ' Dr. Heber Bishop, one of the organizers of the club, had also succumbed to the enticing charms of caterer Howe's pretty wife, and that, as a result, Mrs. Bishop was about to bring proceedings for a divorce, in which she would name the pretty Mrs. Howe as co-respondent.' "

This was followed by an account of a long interview of a reporter of a New York newspaper with the plaintiff, in which the latter branded the story printed about him as " absolutely and unqualifiedly false"; and then came an account of another interview by a reporter of the defendant's paper with the plaintiff's wife, in which she also denounced the story as " perfectly absurd " and " positively untrue."

-The article concluded as follows: " Dr. Heber Bishop is one of the best known young physicians of Boston, and has a delightful home on Newbury Street, with an accomplished wife and at least two very pretty little daughters. He is of the firm of Bishop and Robinson, agents for the United States Mutual Accident Association of New York, of which he is also the surgeon. He stands high in Boston social circles, and was one of the original organizers of the Megantic Fish and Game Club."

Answer, a general denial.

Trial in the Superior Court, before *Sherman*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiff testified in his own behalf.

The defendant admitted the publication, and did not contend that the charges, if any, were true, or that the plaintiff was not a man of good character and standing; but, after the judge refused to rule, as matter of law, that the article was not libellous, called two witnesses, who testified in mitigation of damages that the article, with the exception of that part detailing the interview with the plaintiff's wife, was taken bodily from the New York Sunday Recorder, a newspaper published in that city, and the defendant's counsel argued to the jury that, as matter of fact, there was no libel, and, even if they should find that the article might be construed to be a charge against the plaintiff's character, it was so near the line that he should not be awarded more than nominal damages; and that, in order to give the plaintiff substantial damages, they must find that the charges made, if any, were such as materially to injure a man of good standing in the community. There was no evidence of special damages.

At the close of the evidence, the defendant asked the judge to rule as follows:

" 1. The article as set forth in the declaration is not reasonably capable of any defamatory meaning, and cannot be reasonably understood in a defamatory sense, and, as matter of law, the publication is not libellous.

" 2. If the jury find that the article taken as a whole injured the plaintiff in his feelings and character, but find that the injury was slight, they may award nominal damages; and if they find that the defendant has only just overstepped the line, and that

the action should not have been brought, then the damages must be nominal."

The judge refused so to rule ;. and the defendant excepted.

The judge instructed the jury, among other things, as follows:

" If you find that this is a charge of adultery, or that the article as a whole has a tendency to injure the standing and character of the plaintiff and hold him up to disgrace, then you come to the question of damages. It is not a case, if you find that to be a charge of adultery, where the plaintiff has to prove special damages, to show that he lost this or that patient, because the jury have a right to say, when a man is charged with a crime, that that does him an injury, and to say how much his damage shall be, without special proof of damages. He is entitled to damages for anything he suffered by way of personal feeling, grieving, on account of such a charge being published. And you have a right to consider what a citizen of good standing would feel to have an article of that kind published about him, accusing him of having succumbed to the pretty charms of the caterer's wife, under the circumstances stated. You have a right to consider what would be the injury to any honorable man's feelings by having such a charge as that published in the Boston Journal in the way this was published, and circulated among his friends and neighbors. And he is entitled to damages on that account, because it is what a man suffers in consequence of a libel, and that is one of the elements. He has told you himself in some degree how it affected him, and how it affected the business that he was engaged in, and it was a source for a long time of jest, but of more serious matter than jest among his friends. That may be taken into consideration in determining what the damages are. In other words, being just to the Boston Journal, and being just to Dr. Heber Bishop, you are to say what is a reasonable compensation in dollars and cents for having such an article as that published under the circumstances under which this was published ; and all the natural results coming from that article, in the way of damages, he is entitled to recover. . . .

" Now I think this is a good case to submit to twelve men in Suffolk County, to say what damages a plaintiff shall have who has been treated as Dr. Bishop has. Has he been injured, or has the defendant pursued a proper and justifiable course in which to

treat a citizen who is a man of good character, and where the defendant does not set up the truth? Or has the defendant, while the plaintiff is away, tried to find out what the truth is, and then published the libel with the truth, with the allegation of the wife? Now, you will have this article before you; it is put in the declaration exactly, I understand, as it was printed, and the first question is, Do you find that to be, as I have suggested, that paragraph with the whole article to be practically a charge of adultery? If it is, and it is not true, — and it is not claimed to be true, — then the plaintiff is entitled to whatever damages you think a man is entitled to, who has a good character and who is above reproach, who is accused in a public journal like the Boston Journal of that crime, and sent out under the circumstances under which this was; because you are to take in mitigation, if there is anything in mitigation of it, — you are to take into consideration that the defendant had published what was published in New York, that the article was not true, so that when the defendant published this article it had not only the fact that Mrs. Bishop, but that Dr. Bishop also, denied that there was any truth in that accusation. But still the defendant published it with their denial.

"Now, it is for you to say whether the defendant is justified in doing that, or whether, when the defendant found out both from the plaintiff and his wife, acting separately and from different sources, that there was not a word of truth in the article, that it was a gross libel, the defendant can go on and publish it, and then set up as an excuse that the defendant consulted both the plaintiff and his wife, and that they both said that it was not true. And if you say it is a libel under the rules I have given you, you are to say what the damages are."

The defendant excepted.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*R. F. Sturgis*, for the defendant.

*P. H. Cooney*, for the plaintiff, was not called upon.

MORTON, J. We think that the article clearly was defamatory. Even if it did not impute adultery to the plaintiff, it tended to subject him to public ridicule and to charge him with misconduct, and to impair his reputation and standing in the

community, and was therefore libellous. If it did impute adultery, as the jury might have found that it did, it was still more libellous. It cannot be regarded as a vindication of the plaintiff, even if we assume that a publisher of a newspaper may print a libellous statement for the purpose of pronouncing it false. The fact that a libel may not be believed does not excuse the party who publishes it, nor deprive the plaintiff of all except nominal damages. *Kenney* v. *McLaughlin*, 5 Gray, 3. *Markham* v. *Russell*, 12 Allen, 573. *Marble* v. *Chapin*, 132 Mass. 225. The article being libellous, it was for the jury to determine the damages. The defendant was liable for the natural consequences of the tort which it had committed. *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238. Whether those were of a character to entitle the plaintiff to substantial damages, or only to nominal damages, was for the jury to decide, and they were in effect so instructed. The rulings asked for were rightly refused.

The defendant objects that certain portions of the charge on the question of damages tended unduly to bias and influence the jury. The tone of a charge is not a subject of exception, unless the effect of the charge is to cause a mistrial or a failure of justice. *Beal* v. *Lowell & Dracut Street Railway*, 157 Mass. 444. We do not think that such was the case here. The defendant did not contend that the charges were true. The article was sensational in character, and was printed in a sensational style, and the jury properly may have found that it was a gross libel, though the defendant was innocent of any malicious intent, and that the plaintiff had been greatly injured in his feelings and reputation by it, and they may have awarded him compensation accordingly, as they had the right to do.

*Exceptions overruled.*