AMERICAN TUBE WORKS *vs.* MARY A. TUCKER.

Suffolk.   January 15, 1904. — February 27, 1904.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Practice, Civil,* Exceptions.  *Executor.  Agency.  Estoppel.*

Where other evidence besides an auditor's report has been introduced at a trial, no exception lies to a refusal to rule that on the facts and findings in the auditor's report the auditor's general finding was not warranted, and that on the facts as stated by the auditor in his report the jury must find the other way, it being within the discretion of a trial judge to refuse a request for a ruling upon the effect of only a part of the evidence considered separately from the rest.

In an action against a widow as executrix under the will of her late husband, on an account annexed and certain promissory notes, for liabilities alleged to have been incurred by the defendant through her son as agent, the notes being signed in the name of the estate of the defendant's husband by the son as attorney, it appeared, that the defendant's husband was a plumber, and that for nine months before his death the business had been wholly in charge of the son, that by his will the defendant's husband bequeathed his business to his son, with all stock in trade, book accounts and contracts, on condition that the son should make various other payments and also pay the "debts owing . . . on account of the business", and directed "that the written promise or guarantee of my said son, C., to the executrix of my will . . . that he will comply with and perform all the provisions, conditions and requirements of the bequest of the business as aforesaid, shall be sufficient to vest in my said son, C., the said business and property thereto appertaining." The son, without executing a written guaranty and before performing all the conditions named in the will, assumed and carried on the business on his own account with the consent of the executrix. The son in carrying on the business kept a bank account in the name of his father's estate and drew checks signed in the name of his father's estate by himself as attorney. The defendant signed a power of attorney authorizing her son to draw as her attorney any check upon this account, and to indorse for deposit and collection any check payable to the estate. The son testified that he wanted this power because checks kept coming in in the name of the estate. It appeared however

that the plaintiff never knew of this power of attorney, and it did not appear that the plaintiff relied in any way upon the form of check or signature. The jury found for the defendant. *Held*, that this verdict was justified, there being evidence on which the jury could find that the son was carrying on the business on his own account and not as agent of the defendant, and also could find that the plaintiff was not misled by the acts of the defendant so as to create an estoppel.

CONTRACT, against the executrix under the will of Isaac N. Tucker, late of Boston, with three counts, one upon an account annexed for $2,593.31 with interest from May 31, 1901, and the other two counts on promissory notes, each for $927.57, given in part payment of the account declared on in the first count. Writ dated July 16, 1901.

In the Superior Court the case was tried before *Aiken,* J. The will and codicil of Isaac N. Tucker contained the following:

"First. I nominate and appoint my wife, Mary A. Tucker, to be the executrix of this my last will and testament, and I request that she be not required to furnish a surety or sureties on her official bond. Second. I give and bequeath unto my sons, Charles B. and John D. Tucker, or the survivor of them, the business now carried on by me, together with all stock in trade, apparatus, tools and utensils, books and book accounts, contracts, and all things pertaining to said business. . . . Whereas my said wife, Mary A. Tucker, did in the month of June, 1899, pay out of her money, sundry bills for me, amounting to about $1025.00, for which she has not been reimbursed, I direct my said sons, Charles B. and John D. Tucker, or the survivor of them, to pay unto my said wife, unless she shall have been repaid before my death, the sum or sums so paid out by her for me, and that such payment by them shall be a condition, in addition to debts owing to other people on account of the business and the bequests hereinafter contained, to the vesting in them of the bequest, contained in the second clause of my will. I further direct my said sons, or the survivor of them, to pay out of the business bequeathed to them the sum of $25 per week to my daughter, Grace B. Tucker, until the day of her marriage. I further direct my said sons, or the survivor of them, to pay out of the business aforesaid the sum of $25 per week to my said wife until January 1, 1901. I further direct

my said sons, or the survivor of them, to pay out of the business all bills due on account of household expenses at date of my death, and such sums as shall be received under the sanction of the Judge of the Probate Court for the purchase of a suitable lot in the cemetery, erection of a monument, and the payment of the funeral expenses. I further direct that my said sons, or the survivor of them, shall pay from the said business the expense of putting into a tenantable condition, unless the same shall be done prior to my decease, the house No. 20, on Kendall Street, in said Boston, the same now being vacant and untenantable. I hereby confirm the provisions of my said will and codicil heretofore made except as above altered. . . .

"Know all men by these presents, that whereas I, Isaac N. Tucker, did by instrument dated January 27, 1898, make my will and testament to which I have added codicils dated August 26, 1899, and September 11, 1899, and desire to add a third codicil thereto, having in mind the welfare of my family and estate and future conduct of the business wherein I have for many years been engaged, and being satisfied that the other provisions of my will and codicils will be better and more satisfactorily carried out and performed if the said business shall be in the hands of my said son Charles, only, than if left to my said sons Charles and John or the survivor of them, as heretofore provided, inasmuch as said John has not shown himself capable of managing discreetly the said business in whole or in part, but has been unsatisfactory to me in his conduct in business and otherwise.

"Now therefore I do hereby revoke the bequest in the second clause of my said will wherein I gave the business aforesaid to my said sons, Charles B. and John D. Tucker, or the survivor of them, and instead thereof I do hereby give and bequeath unto my said son, Charles B. Tucker, the said business together with all stock in trade, apparatus, tools and utensils, books and book accounts, contracts and all things appertaining to said business, subject, however, to the same conditions as were by me imposed thereon in and by the provisions of said will and codicils or either of them, and wherever in said will or either of said codicils I have used the words 'Charles B. and John D. Tucker, or the survivor of them', or the words, 'my said sons or the survivor of them',

said words shall be stricken out and instead thereof the words, 'my said son, Charles B. Tucker,' shall be used; and I further direct, and it is my will, that the written promise or guarantee of my said son, Charles B. Tucker, to the executrix of my will or to the administrator with the will annexed, that he will comply with and perform all the provisions, conditions and requirements of the bequest of the business as aforesaid, shall be sufficient to vest in my said son, Charles, the said business and property thereto appertaining; and whereas I am now contemplating raising a sum of money for the immediate needs of the said business by the sale or mortgage of portions of my real estate, I further direct, and it is my will, that such sum or sums as shall be raised by sale or mortgage as aforesaid and devoted to the use of the business shall likewise be repaid, as soon as conveniently may be done, out of the business by my said son, Charles; and if there shall be a sale of any real estate for said purpose, the money so repaid by my said son, or so much thereof as represents the proceeds of the sale, shall be regarded and treated in the settlement of my estate in all respects in the same manner as the real estate so sold would have been treated; if said money is raised by mortgage the interest thereon shall be paid by my said son Charles, until he shall repay the principal, and if by sale then he shall pay to the estate interest at current market rate until he shall pay the amount so realized from said sale; so much of the sum repaid by him as represents the proceeds of mortgage indebtedness hereafter incurred by me for business purposes as aforesaid shall be by my estate applied to the payment of such indebtedness. In all other respects I confirm said will and codicils. . . ."

At the close of the evidence the plaintiff requested the judge to rule and to instruct the jury as follows: "1. On all the evidence your verdict must be for the plaintiff. 2. Upon the facts and findings reported by the auditor, his general finding for the defendant was not warranted or justified as matter of law. 3. If you find the facts to be the same as stated by the auditor in his report your verdict must be for the plaintiff. 4. Your verdict must be for the plaintiff, unless you find facts, other than those reported by the auditor, warranting a different conclusion or unless you find that the facts are different in

some respect from what they are stated by the auditor to be."
" 12. If you find that the business came into the possession of
the defendant as executrix and that Charles B. Tucker never
complied with the conditions stated in the will and codicils on
which the vesting in him of the business was made to depend,
and that there was never any bill of sale or actual transfer of
the business to Charles B. Tucker, then the business did not
belong to him."  " 17. The expression, 'the estate of' a de-
ceased person, means and alludes to the personal representative
of that estate, that is, the executor or administrator."

The judge refused to give the instructions numbered 1, 2, 3
and 4, and refused to give the requests numbered 12 and 17
except so far as incorporated in his instructions to the jury.
The jury returned a verdict for the defendant: and the plaintiff
alleged exceptions.

*J. P. Crosby,* for the plaintiff.

*A. M. Lyman,* (*L. D. Jennings* with him,) for the defendant.

HAMMOND, J.   The plaintiff seeks to hold the defendant first
upon the ground that she as executrix of the will of her late
husband Isaac N. Tucker was carrying on the business through
her son Charles as her agent, and second on the ground that she,
by her acts and omission to act when she should have acted and
by her conduct in general, permitted Charles to hold himself out
as conducting the business for the estate and the plaintiff in
reliance upon that representation parted with its goods, and that
therefore she is estopped to deny that she is individually re-
sponsible to the plaintiff.   Shortly stated, the contention of the
plaintiff is that the defendant is responsible either because she
was the contracting party, or because she is estopped to deny
that she was.

The second, third and fourth requests relate simply to the
case as shown in the auditor's report, and, inasmuch as there
was other evidence introduced at the trial, they are open to the
objection that they were requests for a ruling upon the effect of
only a part of the evidence considered separately from the rest,
and it is well settled that that is a sufficient reason for the re-
fusal of the court to give them.   We pass, therefore, to the con-
sideration of the first request, which was in substance that on
the evidence a verdict should be ordered for the plaintiff.

At the death of the husband in October, 1899, the situation was peculiar. He had been carrying on the plumbing business for years, but for the last few months of his life he had not been able to attend to it, and the son Charles "had been in entire charge thereof, consulting often with his father." The will contained a bequest to Charles of "the business now carried on by me, together with all stock in trade, apparatus, tools and utensils, books and book accounts, contracts, and all things pertaining to said business." Several conditions were annexed to the bequest, one of which was that in addition to other sums Charles should pay the "debts owing . . . on account of the business." The plain intent of the testator was that Charles, upon complying with the conditions or giving a guarantee of compliance, should take the business as it was, with the right to all the assets, including book accounts and unfinished contracts, and should be liable to pay all the business liabilities then existing. In a word, the testator intended that both as to assets and liabilities his son should stand with reference to the business as he, the testator, stood at the time of his death.

After the death of his father, Charles assumed charge and control of the business, and the defendant, neither as executrix nor as an individual, assumed any control or drew any money from the business; and the evidence tended to show that both the defendant and Charles believed that upon the death of the father the business passed under the will to Charles as his own, and that he took possession and carried it on not as the agent of his mother but as legatee under the will. It is true that he collected the bills which were unpaid at the time of his father's death, and that he paid many of the business debts left by his father, but in doing all this the jury might have found that as between him and the estate he was acting under the rights granted to and the responsibilities imposed upon him as legatee by the will. To a certain extent, so far as respected the business, he had upon this view assumed as legatee to do what ordinarily is done by an executor. If he was thus acting, the fact is important and it furnishes a reasonable explanation of his conduct in doing in the business many things the duty to do which primarily rested upon the executrix.

So far as respects the inventory sworn to a few weeks after the testator's death and filed in the Probate Court in June, 1900, it may be said that since the property in the business was a part of the assets of the testator's estate it was the duty of the executrix to charge herself with it in the inventory; and that was so, even if she had delivered the property to the legatee. Nor do we think that the method of keeping the bank account, as it is explained by the witnesses, is conclusive in favor of the view that the defendant was carrying on the business.

It is urged, however, by the plaintiff that the son had not complied with the conditions of the bequest, and that therefore the defendant had no right to turn the business over to him; and the twelfth request embodies that proposition in substance. Upon that point the jury were instructed to the effect that this requirement of a guarantee was for the protection of the beneficiaries under the will, and that if the executrix saw fit to turn over the business to Charles without a guarantee or before a performance of the conditions named in the will, she might be liable to any parties aggrieved by that action, but that the plaintiff was not such a party, so far as material to this case; and that while the fact that Charles had not complied with the conditions could be taken into consideration upon the question whether the business had been turned over to him, still it would not prevent Charles from carrying on the business on his own account. This seems to us to be correct. The question was whether Charles was actually carrying on the business on his own account with the consent of the executrix, and not whether she ought to have consented. Without a further recital of the evidence it is sufficient to say that the question whether the business was being carried on by the son on his own account, or as agent for the defendant, was a question of fact, and that in the evidence before the jury there is no fact conclusive against the validity of the finding that the son carried on the business on his own account. So far therefore as respects the first ground upon which the plaintiff relies, it was not entitled as matter of law to a verdict in its favor.

We now pass to the question of liability by estoppel. Assuming that the defendant did not carry on the business, has her conduct been such as to estop her from setting up that

defence? The auditor finds that "the plaintiff and its agents never knew, saw or had any communication with the defendant," that she had nothing to do with the business, and that "there was no evidence that the plaintiff was misled by any verbal statements to it, either by Charles B. Tucker or by the defendant." He also reports that while the defendant never gave any notice to the plaintiff that she was not carrying on the business or that the estate was not carrying it on, or that any change had been made in it, or that Charles B. Tucker was not her agent, still she testified before him that she never gave any authority to Charles to "purchase goods of the plaintiff, or of any one, in the name of the Estate of I. N. Tucker, and that she never gave him authority to sign promissory notes for her, or for the estate of I. N. Tucker." The auditor further finds that "the goods in the account of the plaintiff were never . . . delivered to her." He further finds that "it did not appear when the plaintiff had actual notice of the death of Isaac N. Tucker," but that "the plaintiff's account was carried along in its books as charged to I. N. Tucker, until May 4, 1900, after which all charges in the account were made to 'Estate of I. N. Tucker'"; that the defendant "never knew or heard of the plaintiff until this action was brought," but that "she knew that the business was being conducted, in part, under the name of I. N. Tucker, and, Estate of I. N. Tucker"; and that "the defendant supposed, and was acting under the belief, that Charles B. Tucker had a right under the will to take the property as his own." While there was considerable other evidence, still the jury may have thought that the auditor's conclusions upon these various points were right.

Upon the question of estoppel, the plaintiff chiefly relies, however, on the conduct of the defendant with reference to the bank account kept in the name of "Estate of I. N. Tucker." The auditor finds that Charles used this and no other bank account in his business, drawing checks under the style of "Estate of I. N. Tucker, by Charles B. Tucker, attorney." The defendant never drew any checks on this account. It appears that in December, 1899, the defendant signed a power of attorney authorizing Charles to draw as her attorney any check upon this account, and to indorse for deposit and collection any check

payable to the estate, whether in the name of I. N. Tucker or Estate of I. N. Tucker, or herself as executrix. Charles testified before the auditor that he wanted this power because " checks kept coming in in name of the Estate of I. N. Tucker." The jury may have found from all the evidence, including the testimony of Charles and the defendant, that inasmuch as the old bills due the estate on account of the business as well as those due from the estate on the same account were to be settled in the name of the estate by Charles, in accordance with the conditions of the bequest to him, the purpose in giving this power of attorney was to enable him to do this part of the business, primarily a part of the defendant's duty as executrix, and that with one or two exceptions, she never knew or supposed that he was using the power for any other purpose. Moreover it is to be observed that the check of July 27, 1900, the only one set out or described in full, although signed by Charles as attorney for the estate, is payable not to the plaintiff but to the order of Charles B. Tucker and is indorsed by him. It does not distinctly appear that any check signed in this way was ever made payable upon its face to the plaintiff, and each one may have been in the same form as the one just named. It is true that the notes were made payable to the order of the plaintiff, but that is not material on the question of the estoppel by the power of attorney. The evidence tends to show that the defendant never knew of the notes before the suit was begun. It is true that the auditor has found that the defendant knew the business was being conducted in part under the name of I. N. Tucker and Estate of I. N. Tucker, but that knowledge would not of itself make her liable.

But we do not further discuss the matter of her conduct with reference to the alleged estoppel because it was a question for the jury whether the plaintiff was in any way misled by her actions as to the checks or in any other respect. The plaintiff never knew anything of this power of attorney, it does not appear that any single check signed thereunder was made directly to the plaintiff, or that the plaintiff relied in any respect upon the form of the check or signature in parting with its goods. While a strong argument might be made to show that the plaintiff was misled, still no witness called by the plaintiff testified to

that effect. It is plain that on the evidence the questions arising out of the alleged liability on the ground of estoppel were questions for the jury. The judge therefore properly declined to give the first ruling requested.

As already stated, the twelfth request was properly refused.

The instructions to the jury as to the matter contained in the seventeenth request were accurate and sufficiently full.

*Exceptions overruled.*