ELLA D. WHITNEY *vs.* WELLESLEY & BOSTON STREET
RAILWAY COMPANY.

Middlesex.   November 20, 1907. — February 28, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Practice, Civil,* Conduct of trial, Judge's charge.

It is not a violation of the requirement of R. L. c. 173, § 80, that " the courts shall
not charge juries with respect to matters of fact, but they may state the testi-
mony and the law," for a judge in his charge to elucidate the proper application
of the legal principles involved in the case before him by illustrations drawn
from common experience or by reference to cases where similar questions have
been decided, or to define the degree of weight which the law attaches to a
whole class of testimony; and if, by an unbiased analytical statement of the
testimony and of the law, he distinctly indicates to the jury the party who is
entitled to prevail, and a verdict is rendered for such party, the defeated party
has no just reason to complain, especially if, a question being raised as to
whether or not the charge was argumentative, the judge in full and unexception-
able language instructs the jury that what he had said by way of comment was
only to make plain the issues, which were solely for their determination.

TORT for personal injuries received by the plaintiff while a
passenger upon an open car of the defendant by reason of the
seat in front of her breaking and falling against her leg.   Writ
in the Superior Court for the county of Middlesex, dated April
4, 1903.

There was a trial before *Bond,* J.   The plaintiff testified that,
just before she was injured, she had moved to the right end of
the seat, preparatory to getting out, that she was facing the
front, and that the heel of her right foot was toward the outside.
She also testified that her right leg was injured.   A superin-
tendent of the defendant made an examination of the car and
testified that, if the plaintiff was in the position that she testified
to, she could not have been injured on her right leg.   Other
facts appeared as stated in the charge to the jury.   The defend-
ant contended at the trial that the inference to be drawn from
the evidence was that the blow suffered by the plaintiff was on
her left leg; that no substantial injury resulted ; that the claim
of injury to the right leg was a fraudulent claim advanced at
the time of the trial either because some trouble had developed
in that leg from entirely different causes, for which the plaintiff

was seeking to hold the defendant responsible, or because the whole claim of injury, beyond a temporary bruise, was a fraudulent invention and the plaintiff actually had forgotten which leg was struck.

The presiding judge charged the jury with regard to the location and extent of the plaintiff's injury as follows:

" The question as to whether or not she was injured has arisen here in a singular way and calls for you to consider it fully and carefully.   In the first place, Dr. Utley * testifies that the injury that was shown to him and which he examined was on the left leg of the plaintiff.   You have to consider whether that is a mistake on his part; whether he has got some things confused there.   It is not claimed that the plaintiff at any other time ever said that it was the left leg.   Dr. McCollester was called, who saw the plaintiff before Dr. Utley made an examination, and he explains to you what the trouble was, and, perhaps, describes the evidence of the injury in the same way Dr. Utley does, but he says it was on the right leg.   Then, one of the neighbors, the next morning after the injury, August 3, testifies to seeing the injury, and it was on the right leg.   One of the other neighbors went in and assisted with reference to putting on the compress or bandages, and she says it was on the right leg, — and so some of the other neighbors, and they all say that it was on the right leg.   Now, could Dr. Utley have made a mistake there and in his notes, without very much thought as to where the injury was, put it on the left leg?   Well, of course it is for you to say whether that could have been done.   It occurred to me that a person would not make that mistake sitting as you are standing, side by side, you could tell — although some queer things happen about that.   I don't know whether you ever saw it this term, but very often people called up as witnesses are called up and told to hold up their right hand, and they get the left hand up.   I don't know how, but they do sometimes; but, perhaps, that is caused by confusion, or by the fact of a little bit of disturbance mentally, so that they did not think.   But you don't make that mistake with reference to yourself if you are asked

---

* Drs. Utley and Courtney testified on behalf of the defendant, and the other physicians on behalf of the plaintiff.

which side; and a man standing next to you, you don't have any trouble with reference to him, whether it is his right or left; but when you are standing opposite, face to face, and he points out where his trouble is, do you have to stop and think, make a little mental calculation, as to whether that is the left side or the right side? Do you have to stop and think? Sometimes you have occasion to do that, and unless you do stop and think it may be that you will be thinking of your own side as the right side, and look at his same side, which is his left side, and think perhaps that is his right. Whether or not you don't go through a little mental process, when a man stands opposite to you, which you do not go into when he stands side by side, as you stand here. I don't mean to say that that is always so, but I suggest it for your consideration, as to whether or not that note did not get in there without very much thought, — perhaps it wasn't considered of much importance, — or whether the woman did really make a mistake and claim the injury was on one side when it was on the other. Of course if there had been no other evidence except that one time that may be one thing; but if you are satisfied that always at other times, both before and after, — and Dr. McCollester testified that at that very time it was spoken of as being on the right side and not on the left, — it is for you to say whether you believe that at that time there was a mistake made. It is not of so much consequence on the merits of the case, only as the testimony with reference to the complaints of the plaintiff before and after that as to the right side. Did she say by words or acts that it was on the left side at the time, on the fourth of August, that Dr. Utley was there, or is there a little mistake or confusion in his notes which he has referred to in his testimony as to which side it was on?

" Now, there is another piece of testimony which you have to consider and which bears on this same feature of the case: The witness who was called — Rosson — testified that he had experimented with a car and that he couldn't hit his right leg, but he could hit the left, — and bearing upon this question that the injury must have been on the left leg, if any was there; that there wasn't any on the right, because he couldn't get any injury to the right. Well, it is for you to consider whether that witness had misconstrued, or given too narrow or forced a construc-

tion to the plaintiff's testimony here as to how the accident took place. The plaintiff testified with reference to it. And you will recall with reference to that, that she spoke about a bridge which crossed the Boston and Albany Railroad tracks at West Newton, and that she says the accident took place before she crossed that bridge, and back near an engine-house, I think she says; and that the place where she got off was after she had gone on and crossed the bridge some little ways, when the car stopped and she got off and took a Waltham car at West Newton. Now, she says it was some little distance from where she was hurt to where she got off. Now, I may be wrong about that, but I will suggest it to you for your consideration, whether or not the experiment with reference to this injury did not assume that the accident happened just when she was going to get off, and not quite a little distance back of it. And even then you should consider how people get off from an open car. Ordinarily you wouldn't look to see how a person got off. If you had to get off yourself, you would get off, perhaps, always in the same way, or a different way — I don't know — you may never stop to think how you get off from an open car. You know you get your foot out on to the running board in some way, but just how do you turn your limbs before you get off? Now, has the witness made some confusion there with reference to the testimony? As counsel for the plaintiff — in sitting here I couldn't see, but I assumed that he showed you how it might have happened — suppose the two limbs were out, and if you turn them over, turned the knees toward the right, it would bring the left leg up, and then it would be hit; you couldn't hit the right one, — your own good sense would tell you that. But suppose a party didn't do just that way. Supposing a party turns the knees the other way, towards the left, both of them, then could you hit the left one? Mustn't you hit the right one? . . . There isn't any real dispute here, as I understand it, with reference to the direction which the seat struck the limb, one or the other; there hasn't been any controversy at all about that. It wasn't on the knee-pan of either knee. It was below the knee-pan and extended diagonally from the front bone, and dropped down towards the ankle. Now that is the way that Dr. McCollester described it, but he put it on the

right leg; and that is the way that Dr. Utley described it, but he put it on the left leg. Now, it is for you to say, and all I want is to call your attention to it fully, and say whether or not that could have happened. Whether or not it is possible for the injury to have been upon the right leg by that seat falling down; and whether or not that wouldn't depend upon the way that knee happened to be situated at the time that the back of the seat fell down ? . . .

" The doctors disagree here somewhat in their evidence with reference to this injury. I do not mean now with reference to which leg it was on, but as to what the injury was. They call that ' diagnosis ' — they like that word. I don't, — but you may. It really means undertaking to determine what the injury is; and they use it, because, when they use it, it is understood to be just that and nothing more ; and, therefore, they like the old dead-language words that don't change with the use which people make of them. I do not complain about it, but I like words of the present day fully as well as I do the old. The question is whether they have been able to determine what the matter was with that woman. Was there anything the matter? Now, Dr. McCollester and Dr. West have given you their opinion as to the way that they diagnosed it — if I may use their word. Now, if I get their evidence correctly, they think that there was injury to a branch of the sciatic nerve, and that that injury was of such a nature that it has been painful and continues to be painful down to the present time. Now, Dr. Courtney, as I understand him, says that that could not be the trouble; that if that had been the trouble — if there had been a blow upon the sciatic nerve — that the limb would have wasted away, and there would have been what they call ' atrophy ' in the limb, — the limb would have grown smaller, and he says that it has not; and he also says that there would have been in time some paralysis — may be he called it paresis. I won't be sure about that, — but there may have been some other effect, and that that has not taken place. Now, who is right about that? It isn't so much matter to the plaintiff what you call it. The real question with her is whether there is trouble there, whether the doctors can tell what it is, or not. She has undertaken to describe to you the pain that she has suffered

from that.  She says that that is the history of the case from that time down to this.  It is for you to say whether what she says about it is true.  And in considering that you may consider whether the doctors are all mistaken about it, — that is, I mean as to the cause of that pain.  She says that she is suffering a pain from some kind of an injury, and the doctors can't agree as to what it is.  Dr. McCollester and Dr. West think that they have got at what the trouble is; and Dr. Courtney says they have not — and I don't know but Dr. Courtney meant to have you think there wasn't any trouble — I couldn't say about that, — or that they did not describe it just right.  Then there is left for you the question of whether the woman has been injured in some way so that she suffers pain; and that is the great question that you are called upon to consider.  Sometimes the name of an injury or the explanation of the injury is important as to the duration of it, — as to when the woman or party would recover from it; and the name makes some difference there.  But if here is an injury that this woman has suffered from, from that time down to this, and will continue to suffer in the future with reference to it, and which is due solely to the neglect of the defendant, then she is entitled to recover for it.  Although Dr. West and Dr. McCollester may be wrong as to their diagnosis of it, and Dr. Courtney may have satisfied you that they were wrong, that don't help you to say what the real trouble is, or that it may be something else, and it don't make any difference what it is if it is a real injury from which she suffers.  Now, as in the other parts of the case, the plaintiff has testified with reference to it, and while she may not know whether Dr. Courtney is right or whether Dr. McCollester and Dr. West are right, she may know that she has pain there, and if she has, and you believe it, then you have a right to act upon her testimony. If you don't believe it, if you say that that is all false, then you wouldn't act upon it.  It is not a question of whether the doctors know what the matter is; it is a question really whether there is any trouble there which she suffers from.  If you say that she was injured substantially the way she says, and that she suffers in substantially the way she says, then it is for you to say what is a reasonable compensation for that.  That is all the way we have of disposing of cases of this kind.  You give to the

plaintiff such sum of money as you say is a reasonable compensation for the injury sustained."

The defendant's counsel having asked to have an exception noted to that portion of the charge which referred to the evidence as to whether the injury was to the plaintiff's right or to her left leg, so as to ascertain "whether it may not have gone into the domain of argument a little further than it ought to have," the presiding judge further charged the jury as follows :

"There is one matter, gentlemen, perhaps I didn't state distinctly enough, although I may have done so in some other cases during the term. I called your attention to the evidence with reference to whether the plaintiff could have been injured upon her right leg or whether it necessarily must have been on the left. Counsel calls my attention to the fact that he thinks that I misunderstood some of the evidence in the case. What I want to say is this : that with reference to the testimony in the case the views and suggestions of counsel as explained to you may be considered to aid you in recalling what the evidence was ; but it is for you to say what the evidence was. And I have not any right to undertake to tell you that the evidence is this way or that way. I simply call your attention sometimes to the evidence to illustrate what I want you to consider, but you do not take the evidence from me. You take the evidence from the witnesses. You think it over, and if you will think it over you will be able to determine satisfactorily, I think, what the evidence was. And that is true with reference to every other part of the case. Counsel assist the jury when they recall to your mind what the witness said. But if it does not assist you to recall that that was what the evidence was, then that is of no help to you, because you must rely upon yourselves in the end. The jury under our system of trials are the sole judges of what the evidence was, and what facts were true and ought to be inferred from it. That is wholly for you. All I want to say is that you depend upon your own judgment of the testimony and not on what I say, because that may not be of any assistance to you at all."

There was a verdict for the plaintiff, and the defendant alleged exceptions.

*H. W. Dunn,* (*W. A. Kneeland* with him,) for the defendant.
*H. N. Allin,* for the plaintiff.

BRALEY, J.   If trial by jury is to retain its efficiency, the presiding judge by means of suitable instructions must enable jurors to see their way clearly to a right verdict.  The provisions of R. L. c. 173, § 80, which first appeared in Gen. Sts. c. 115, § 5, that "the courts shall not charge juries with respect to matters of fact, but they may state the testimony and the law," were not intended to destroy this salutary power.  In the construction of the statute it uniformly has been held that, in charging juries, the judge, although prohibited from stating his opinion as to the credibility of witnesses, may sum up the testimony according to his recollection, submitting its effect, however, to their consideration and judgment, and leaving to them for decision all issues of fact within their province.  He may elucidate the proper application of the legal principles involved by illustrations drawn from common experience, or by reference to cases where similar questions have been decided, and define the degree of weight which the law attaches to a whole class of testimony.  In any clear analysis of the evidence, however impartial, the attention of the jury necessarily must be directed to the weight and importance of particular facts which they may find to have been proved.  If an unbiased analytical statement of the testimony and of the law distinctly indicates the party who is entitled to prevail, this furnishes no just reason for the defeated party to complain, either of the method employed or of the adverse verdict.  Besides, it is not a violation of the constitutional requirement that judges shall be " as free, impartial and independent as the lot of humanity will admit," if the instructions, while judicially fair, are comprehensively strong, rather than hesitatingly barren or ineffective, and neither the tone of a charge nor the form of verbal delivery are of themselves ground of exception, if no error of law appears.  In a word, the judge who discharges the functions of his office is, under the statute as well as at common law, the directing and controlling mind at the trial, and not a mere functionary to preserve order and lend ceremonial dignity to the proceedings.  Instances of the exposition and practical application of the statute in accordance with these views may be found in the following cases among others,

in which the trial court has been held not to have exceeded its judicial powers. *Durant* v. *Burt*, 98 Mass. 161, 165, 168. *Oakman* v. *Boyce*, 100 Mass. 477, 483, 486. *McKean* v. *Salem*, 148 Mass. 109. *Cobb* v. *Covenant Mutual Benefit Association*, 153 Mass. 176, 180, 181. *Beal* v. *Lowell & Dracut Street Railway*, 157 Mass. 444, 448. *Moseley* v. *Washburn*, 167 Mass. 345, 362. *Bishop* v. *Journal Newspaper Co.* 168 Mass. 327, 330, 331, 332. *Cook* v. *Bartlett*, 179 Mass. 576, 577, 578, 580. *Partelow* v. *Newton & Boston Street Railway*, 196 Mass. 24. See also *Commonwealth* v. *Johnson*, 188 Mass. 382, 387, and cases cited. In the present case, under the exceptions taken at the close of the charge, the defendant alleged a twofold grievance, namely, because the testimony had been incorrectly stated, and because the comment upon it was argumentative, rather than expository. The first objection has been waived by the subsequent stipulation, that the evidence had been correctly stated, and, to ascertain if the instructions are open to the second objection, the entire charge is to be considered, and not isolated portions. The plaintiff sued for personal injuries received while a passenger on a car of the defendant, and in defense it was said that her claim was a fraudulent invention to get damages. In her evidence, she described the injury as being on her right leg, while a medical witness of the defendant, from a physical examination made shortly after the accident, directly contradicted her, by locating it upon the left leg. But even then the jury could say that, if the injury was proved, the distinction of members was of little consequence. If, in his recapitulation of the testimony, the judge dwelt upon this incident at great length, he did not misquote the evidence, and it cannot be said that the illustrations used were wholly inappropriate. The real gravamen of the complaint is, that they conveyed to the jury an argument in favor of the plaintiff. But, if, standing alone, there is some ground for this criticism, as this portion of the charge should have been more cautiously expressed, upon his attention having been directed to the matter, the judge in full and unexceptional language further instructed them that not only were they to recall the evidence from having heard the witnesses, and depend upon their own judgment as to its evidentiary value, but also that what he had said by way of comment

was only to make plain the issues, which were solely for their determination.

It is fairly manifest upon a review of the entire charge that no intentional argument was used or expression of opinion given, by which the jury should be led to infer that in the judgment of the court the plaintiff ought to prevail. *Cook* v. *Bartlett*, 179 Mass. 576, 580.

*Exceptions overruled.*