LOUIS B. RIDENOUR *vs.* H. C. DEXTER CHAIR COMPANY.

Suffolk.     March 20, 1911. — May 18, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Practice, Civil,* New trial, Exceptions, Requests and rulings. *Frauds, Statute of. Payment. Accord and Satisfaction. Pleading, Civil,* Answer. *Practice, Civil,* Exceptions.

The denial, by the judge who presided at a trial, of a motion for a new trial where the party who made the motion contended that the jury must have disregarded the judge's instructions, is discretionary and is not subject to exception.

A request for a ruling, that upon all the evidence at a trial a verdict for the plaintiff is unwarranted, comes too late, when made at the hearing of a motion for a new trial after a verdict has been returned for the plaintiff, because such a question should have been raised before the verdict.

In an action for the value of services as a salesman, rendered by the plaintiff to the defendant, the defendant filed a declaration in set-off for a sum largely in excess

of the amount claimed by the plaintiff. At the trial the items of the declaration and of the declaration in set-off were conceded to be true, and the plaintiff contended and, without objection on the part of the defendant, introduced evidence tending to show that he had made an oral agreement with the defendant by which his salary as salesman was increased during a certain period of a number of years then passed, the increase being applied in payment of the amount claimed in the declaration in set-off. The defendant contended that the agreement, not being in writing, was void because of the statute of frauds. *Held*, that under the circumstances the statute could not be relied on and did not operate to prevent the plaintiff from receiving, for services which he had rendered under the agreement, the discharge of the defendant's claim, although such an agreement had not been made in writing.

At the trial of an action against a corporation for services as a salesman, the defendant filed a declaration in set-off. It appeared that the plaintiff had purchased shares of the capital stock of the defendant and had given therefor his note payable to the defendant's acting treasurer, who was at the same time its president, a member of its board of directors, the owner of a majority of its capital stock and practically in sole control of the corporation. The treasurer indorsed the note and thereafter the amount of interest that was paid thereon was charged to the plaintiff in his account with the company. These payments of interest constituted the items in the declaration in set-off. There was evidence that thereafter the plaintiff made an agreement with the company whereby he was to receive an increase of salary, the increase to be applied toward payment of the note, and that after several years, in an accounting between the plaintiff and the treasurer, acting for the defendant, it was agreed that a small balance due from the plaintiff to the defendant in his general account should be cancelled, that the plaintiff should be credited with the amount due to him on account of the reserved increase of salary, which amount exceeded the amount of the note and the interest items, and that the note should be returned to him discharged. The note was returned to him. *Held*, that a finding, that a settlement was made between the plaintiff and the defendant by which the note and all ,of the items of the declaration in set-off were paid, was warranted.

If, at the trial of an action of contract where the plaintiff, in defense to a declaration in set-off, his answer to which has been merely general denial and payment, introduces in evidence an auditor's report which states that the items in the declaration in set-off had been included in a settlement between the parties and were discharged thereby, and the defendant does not object to the report on the ground that the plaintiff had not pleaded an accord and satisfaction and does not call that defect in the pleadings to the attention of the presiding judge, the defendant cannot rely upon such defect in this court for the first time on exceptions to the refusal of the trial judge to give certain rulings which did not in terms mention it.

CONTRACT, with a declaration, as amended, in three counts, the first and second for $1,331.47 for commissions alleged to have been earned by the plaintiff as a salesman, and the third for $225, claimed as a share of profits in a branch of the defendant's business alleged to be due to the plaintiff under an oral contract between him and the defendant. Writ in the Municipal Court of the City of Boston dated March 24, 1908.

There was a declaration in set-off in two counts, the first count, as amended, claiming $1,971.54 on an account annexed, and the second count, also upon an account annexed, claiming $3,321.71.

There were answers of general denial and payment both to the declaration and to the declaration in set-off.

On appeal to the Superior Court, the case was referred to Hollis R. Bailey, Esquire, as auditor. Among other findings in the report were the following:

The plaintiff from the year 1897 to early in the year 1908 was in the employ of H. C. Dexter and of the defendant as a travelling salesman and otherwise. The defendant was incorporated in the year 1900 and was engaged principally in the manufacture of furniture, having its factory and principal place of business at Black River, in the State of New York. Henry C. Dexter owned a majority of the stock and was a director and also the president and the general manager and the acting treasurer. He practically had the entire control of the affairs of the company.

It was not disputed that in April, 1900, when the company was organized, the plaintiff took twenty-five shares of stock and gave Dexter his note for $2,500, payable on demand with interest at six per cent, with the twenty-five shares of stock as collateral; and that in October of the same year he took twenty-five additional shares and gave Dexter a second note for $2,500, payable on demand with interest at six per cent. Dexter indorsed the notes and placed them with a bank in Watertown, New York. The interest was paid by Dexter as it became due and was charged to the plaintiff in his general account. No dividends ever were declared by the company. In March, 1907, the first of the notes was taken up by Dexter from the bank and returned with the twenty-five shares of stock to the plaintiff. In January, 1908, the second of the notes was taken up by Dexter from the then holder and was returned to the plaintiff, the twenty-five shares of stock being retained by Dexter. The circumstances attending this settlement of the notes were in dispute.

The plaintiff's contention before the auditor in regard to the note transactions was that it was agreed in December, 1902, be-

tween Dexter and himself that he, Ridenour, should for the year 1903 receive $1,000 a year additional salary to be applied toward paying the notes; that this arrangement continued until the end of the year 1906, when a new arrangement was made; that in December, 1905, it further was agreed that during 1906 he should be allowed certain additional commissions earned on outside business, the same to be collected by Dexter and credited to him on his general account; that the first note with the stock was returned to him in March, 1907, by reason of the fact that the extra salary for the years 1903 to 1906 inclusive was more than enough to pay the note; that in November, 1907, talk was had about the remaining note and about the 1906 account, and that Dexter gave to him a statement showing the extra commission for 1906, amounting to $1,610.36, credited on his general account, and $150 paid by Ridenour in 1904 also credited, leaving the balance due on the general account January 1, 1907, $340.96; that Dexter then was willing to settle the account and the remaining note, he, Dexter, keeping the stock, waiving the balance of $340.96, and taking up and returning to the plaintiff the remaining note; that the plaintiff was not then willing to concede so much, but finally in the January following concluded to settle on the basis above stated, and that the last note was thereupon returned to him and the twenty-five shares of stock retained by Dexter.

The defendant contended before the auditor that there was talk in December, 1902, of an increase of salary of $1,000 per year to apply on the notes but that no agreement ever was arrived at and that no increase of salary took effect; that the additional commissions for 1906, $1,610.36 and $150, were to apply on the notes and not on the general account; that there was no waiver of the balance of $340.96 and no settlement of the general account for 1906; that the second note was paid by the plaintiff giving up the twenty-five shares of stock, and that the first note was only paid to the extent of the $1,610.36 and $150, leaving a balance of about $800 still due on account of the first note.

The auditor then stated that there were two questions to be determined, (1) Whether there was an agreement in 1902 or thereafter for an additional salary of $1,000 per year for the years 1903–1906 to apply on the notes? (2) Whether there

finally was a settlement of the general account in connection with the note transactions?

After reciting at length the evidence bearing on these questions, much of which consisted of letters which passed between the parties, the auditor found (1) that there was an agreement in 1902 or thereafter for an additional salary of $1,000 per year for the years 1903, 1904, 1905 and 1906 to apply on the notes; (2) that there finally was a settlement of the general account in connection with the note transactions; (3) that there was nothing due to the defendant under its declaration in set-off; (4) that the plaintiff was entitled to recover on the first two counts $795.39, and on the third count $179.61, with interest on both sums.

The report contained no reference to any statute of frauds being introduced in evidence or relied on by the defendant.

The case was tried in the Superior Court before *Raymond,* J. The plaintiff relied solely on the auditor's report. The defendant called Dexter and introduced in evidence the New York statute of frauds. The evidence as to the New York statute of frauds was the last evidence offered in point of time, and no objection to evidence on the ground of the statute was made during the trial or before the auditor, nor was any reference to the statute made in the pleadings. There was no reference to the Massachusetts statute of frauds until the requests for rulings.

At the close of the evidence the defendant asked for the following rulings:

" (1) That upon the evidence as to the law of New York, the alleged contract of 1903 was a contract not to be performed within a year from the time of its making and was null and void because not subscribed by this defendant.

" (2) That under the law of Massachusetts the alleged contract for 1903 would be within the statute of frauds of an agreement not to be performed within a year and would not be binding upon the defendant.

" (3) That there is no sufficient evidence in the case to warrant the jury in finding that any agreement was made by the defendant fixing the salary of the plaintiff for the years 1903, 1904, 1905 and 1906 in excess of $2,200.

" (4) That there is no sufficient evidence in the case to war-

rant the jury in finding that the plaintiff became entitled to receive from the defendant as compensation for his services for 1903, 1904, 1905 and 1906 any sum in excess of $2,200 per year and the special commissions with which his account was credited by the defendant.

" (5) That there is no sufficient evidence in the case to warrant the jury in finding that the amount claimed by the defendant in its set-off less the credits admitted by it has been paid.

" (6) That there is no issue upon the pleadings as to whether the note of April 2, 1900, was paid by the defendant company, and the evidence relating to its payment out of a supposed reserved salary is wholly immaterial. If the note was paid by the defendant for account of plaintiff out of reserved earnings not credited to the plaintiff, such payment could not affect in any way the items that were charged upon the books."

" (9) That if the jury should find that the April note was paid by the corporation at plaintiff's request applying to the payment the remittance of $150 from Washington and the commission credit of $1,610.36, such payment would not affect the amount due by plaintiff upon his general account and in the absence of further testimony would require a finding for the defendant for the amount of its set-off; but if said sums were not applied by the defendant company to the payment of the April note, but were applied to plaintiff's general account as a payment therein, the defendant would be entitled to a finding upon its set-off of the difference between the two amounts, being $340.96."

The presiding judge refused to rule as requested.

The only portions of the charge which were stated in the bill of exceptions were the following:

The jury were instructed " that the statute of frauds did not apply to the case, and they need not consider it, and further . . . that there was no increase in salary unless the parties agreed together to increase the salary. That it was not necessary for this case that the conversation which they held or the writing . which they passed on that point should be produced and shown. That they had a right to find an increase from all the facts as they were developed in the trial. That if there was a contract to increase the salary from $2,200 to $3,200 that that agreement entered vitally into a finding on the general accounts. That

they might consider the series of letters that were in evidence, the personal testimony of Mr. Dexter bearing upon them, the credibility of the testimony given by Mr. Dexter, his failure to reply to plaintiff's letters in determining whether or not there had been any increase in salary.

"After calling the jury's attention to the letter of January 17, 1906, and the defendant's reply of January 20, 1906, the judge said 'Yes, there was a response on January 20, in which Mr. Dexter refers particularly to the letter of January 17, and says in regard to the statement of account, "I cannot just now give you the same," and goes on to state reasons why he cannot. I call to your attention that letter and ask you to examine it particularly and see from that in connection with the other (January 17, 1906) whether or not the agreement was treated as an existing agreement between the parties.' "

The jury found for the plaintiff in the sum of $1,071.69. The defendant moved for a new trial, as stated in the opinion. The motion was overruled. The defendant alleged exceptions to the rulings at the trial and at the hearing of the motion for a new trial.

Other facts are stated in the opinion.

The case was submitted on briefs.

*W. C. Cogswell & J. H. Appleton*, for the defendant.

*J. Comerford*, for the plaintiff.

BRALEY, J. The refusal to grant a new trial on the defendant's motion, that the jury must have disregarded the instructions, was discretionary, and cannot be reviewed on exceptions. *Lord* v. *Rowse*, 195 Mass. 216, 219, 220. Its further request, that upon all the evidence the verdict was unwarranted, sought to raise a question which was not open, as it should have been raised before verdict. *Loveland* v. *Rand*, 200 Mass. 142, 144.

The exceptions taken at the trial relate to the refusal to rule as requested, and to the instructions.

It was conceded, that the amount found by the auditor, to whom the case was referred, was due the plaintiff, but the defendant having declared in set-off for a much larger sum, the items of which were admitted to be correct, the controversy before the jury was confined to the single issue, as to whether the counter claim had been discharged by payment.

The auditor states at length the business transactions between the parties. In the year of the defendant's corporate organization, the plaintiff, who was in its employment as a salesman, became the owner of fifty shares of the capital stock, which was sold and issued to him by the company. To obtain the money to pay for the stock, he gave two promissory notes, payable on demand to the order of the president, who acted as treasurer and general manager. The notes were discounted by the treasurer at a national bank, who paid the interest as it became due, and charged the payments to the plaintiff in his general account in the company's books. It was the plaintiff's contention, that while the notes were outstanding, it was agreed that his salary should be increased, the excess to be reserved and applied in payment of the notes, and the auditor so found. If the memorandum in writing of the agreement was not signed by the parties, and the contract was oral, and not to be performed within one year from its date, the defendant did not object to the admission of the unsigned agreement or of the auditor's report in evidence, but only sought to control and rebut the report by the evidence of its treasurer, that no agreement was ever made. The question at the trial was not whether the plaintiff could have enforced the contract by an independent action, if the statute of frauds of the State of New York or our own statute had been pleaded in bar. It was, whether the defendant agreed to apply in liquidation the reserved salary, even if the agreement might be unenforceable. The contract moreover had been executed and nothing remained to be done except to apply the money in payment. The first and second requests were rightly refused.

It appears from the report, that after much correspondence, and many interviews between the plaintiff and the treasurer as to the plaintiff's contractual relations with the company, his liability on the general account, and the disposition which should be made of the notes, the plaintiff and the defendant's treasurer met to adjust the indebtedness, and settle their differences. If the jury accepted the report, they were warranted in finding that the conclusions reached by the auditor, that the general account which is the subject of the set-off was adjusted in connection with the settlement of the notes, were right, and that there was nothing due the defendant. We find no error in the refusal to

give the third, fourth and fifth requests. The sum reserved appears to have been largely in excess of the amount required to pay the notes and the general account after the partial payments made by the plaintiff upon the first note were properly credited, and the authority of the treasurer to bind the defendant does not seem to have been disputed. Indeed from his own evidence he had practically the sole control of the company, and if the company's books did not show the reserved salary, which the report states had accrued at the date of settlement, the plaintiff could not be deprived of what the treasurer is found to have conceded was justly due him. If the plaintiff had admitted the correctness of the general statement, he was indebted to the defendant for the balance then shown to be due on the account. But he did not admit that he owed anything. The offer of the treasurer to settle the notes and the general account by waiving the balance, which the auditor finds the plaintiff accepted, accordingly operated as a liquidation and discharge of the debt. *Donohue* v. *Woodbury*, 6 Cush. 148. *Tompkins* v. *Hill*, 145 Mass. 379.

It is now contended that the settlement could not be shown, as an accord and satisfaction had not been pleaded. But the defendant neither objected to the report which was the only evidence of the settlement, nor suggested that the defense was not open under the answer. If relied upon, it should have been called to the attention of the presiding judge, when the plaintiff doubtless would have been given an opportunity to amend. *Oulighan* v. *Butler*, 189 Mass. 287, 289. It cannot for the first time raise a question of pleading in this court on exceptions to the refusal of the presiding judge to give requests which, without calling his attention to the point required him in effect to rule, that the plaintiff's defense was not open on the evidence. *Burnett* v. *Smith*, 4 Gray, 50, 52, 53. *Jones* v. *Sisson*, 5 Gray, 288, 294. *Jones* v. *Wolcott*, 15 Gray, 541, 542. *Wall* v. *Provident Institution for Savings*, 3 Allen, 96, 98. *McLean* v. *Richardson*, 127 Mass. 339, 344. *Carpenter* v. *Fisher*, 175 Mass. 9, 14. Nor is it material that the exceptions state that reference may be had to the pleadings. *Bass* v. *Edwards*, 126 Mass. 445. It, moreover, may be said of the ninth request, that it ignored the explicit finding of the auditor, and the judge was not required to

instruct on a part of the evidence.  *American Tube Works* v. *Tucker*, 185 Mass. 236.   The sixth and ninth requests could not properly have been given.

No error appears in the instructions to the jury so far as argued.  The charge is not fully reported, but the expression that the jury "had the right to find an increase from all the facts as they were developed at the trial" should be read with the preceding statement, that there was no increase of salary unless the jury found a mutual agreement of the parties.   The province of the jury was not invaded by any expression of opinion by the judge which disclosed a bias in favor of the plaintiff.   *Whitney* v. *Wellesley & Boston Street Railway*, 197 Mass. 495.

*Exceptions overruled.*