COMMERCIAL TRUST COMPANY OF NEW YORK *vs.* AMERICAN
TRUST COMPANY.

Suffolk.    March 27, 1923. — May 23, 1923.

Present: RUGG, C.J., BRALEY, DECOURCY, PIERCE, & CARROLL, JJ.

*Contract,* Construction, Performance and breach. *Charter Party. Bills and
Notes. Practice, Civil,* Judgment under G. L. c. 231, § 124.

A charter party of a vessel to carry a cargo from the west coast of Africa to
Boston provided for the payment of a balance of the freight when the cargo
had been " discharged at Boston and the out turn weight of same has been
agreed upon by both parties . . . lay days for . . . discharging shall be
as follows commencing from the time the captain reports his vessel ready
to . . . discharge cargo; berth available or not, . . . cargo to be received
as fast as vessel can deliver in suitable hours and weather, Sundays and Holi-
days excepted. . . . It is hereby understood and agreed that lay days for
discharging, if required, shall not commence until forty-eight (48) hours
after captain reports vessel ready to discharge cargo." In performance
of further provisions of the charter party, and agreeably to all parties,
the charterer and a Massachusetts trust company agreed in writing with
the agents of the vessel that, when the cargo had " been discharged at
Boston and the out turn weight of same has been agreed upon by both
parties, you are hereby authorized to draw on " the charterer " for the
balance of the freight due you in accordance with the terms of the charter
party, and we hereby guarantee that if draft is in order, it will be paid on
presentation to the " trust company. The vessel arrived in Boston on a
Saturday and the captain at once gave notice to the charterer that the
vessel was ready to discharge its cargo, and thereupon the charterer im-
mediately notified the vessel's agents, claiming the forty-eight hours allowed
by the charter party to prepare to receive the cargo. The following Tues-
day was a legal holiday. The discharge of the cargo began at 8 A. M. on
Thursday. An assignee of the rights of the owner of the vessel under the
charter party and the agreement of the trust company drew on the trust
company for an amount which included the balance of the freight and
demurrage in Boston and, acceptance of the draft being refused, brought
an action to recover the amount of the draft. *Held,* that

(1) The quoted provision of the charter party suspended the beginning
of lay days to cover Sundays and holidays and forty-eight hours in addition
" if required," that is, if demanded by the charterer;

(2) Demurrage at Boston should not have been included in the draft
presented by the plaintiff for acceptance by the defendant;

(3) The draft was not " in order " because it substantially exceeded
the amount which the defendant guaranteed to pay;

(4) No action upon the trust company's agreement in writing could be
maintained.

In the circumstances of the action above described, this court determined that it should not now determine under the provisions of G. L. c. 231, § 124, the amount, if any, which the defendant would have been obligated to pay upon presentation of a draft which conformed to the terms of the agreement.

CONTRACT. The declaration is described in the opinion. Writ dated May 10, 1921.

In the Superior Court, the action was heard by *McLaughlin,* J., without a jury. He found certain facts and reported the action for determination by this court upon the terms described in the opinion.

Material portions of G. L. c. 231, § 124, read as follows: " Whenever a question in dispute at the trial of an issue of fact in any civil action or proceeding depends upon the decision of a question of law, the full bench and the Supreme Judicial Court, upon appeal, exceptions or report or otherwise, may, if satisfied that it has before it all the facts necessary for determining the question in dispute, direct that such judgment or decree be entered or that such other action be taken as shall accord with the determination of the full court."

*H. Williams, Jr.,* (*R. H. Davison* with him,) for the plaintiff.

*T. Hunt,* (*J. W. Lowrance* with him,) for the defendant.

PIERCE, J. After a finding for the defendant, by a judge of the Superior Court sitting without a jury, at the request of both parties this case was reported to this court and " is to be determined upon the pleadings, requests of both parties for rulings, and upon my [the judge's] findings of fact and rulings of law." The report contains the following provision: " If these rulings were correct, and law and justice require no other finding than for the defendant, then judgment is to be entered for the defendant, otherwise such order shall be made as law and justice may require."

This is an action of contract by a trust company of New York against a trust company of Boston to recover, in its first count, upon an alleged acceptance of a certain bill of exchange drawn by the plaintiff on April 8, 1921, to its own order, in the sum of $56,683.60 on the defendant company; the remaining counts for the same cause of action

are founded upon the alleged breach of the defendant's written promise to accept a bill of exchange before it was drawn, and to recover damages alleged to have arisen from the failure of the defendant to accept and pay a draft or to pay sums of money due from the defendant to the plaintiff upon the facts set forth.

The facts, so far as they are applicable to certain crucial questions of fact which underlie and determine any obligation of the defendant to the plaintiff, succinctly stated are as follows: On May 19, 1920, the steamship Mount Shasta, owned by the United States, was chartered to the Mount Shasta Steamship Company, a corporation organized under the laws of the State of Delaware. On July 14, 1920, Victor S. Fox and Company, a corporation organized under the laws of the State of New York, agents of the steamship Mount Shasta, executed a charter party of the Mount Shasta to Palmer and Parker Company, a Massachusetts corporation engaged in the business of importing and manufacturing mahogany, for the transportation of a cargo of round and square mahogany logs from a port on the Gold Coast of West Africa to Boston. By the terms of the charter the freight rate was $25 per ton, fifty per cent of the estimated amount of the freight to be payable when the vessel was loaded, the balance of the freight to be payable " when the cargo of the ' Mount Shasta ' has been discharged at Boston and the out turn weight of same has been agreed upon by both parties." The charter party also contained the following clauses: " It is hereby understood and agreed that lay days for discharging, if required, shall not commence until forty-eight (48) hours after captain reports vessel ready to discharge cargo. It is also hereby agreed and understood that Charterers will establish a Letter of Credit, upon signing charter party with a New York Bank for the balance of the freight to be payable upon the out-turn weight of the cargo, as agreed upon by both parties." On the day the charter party was signed Victor S. Fox and Company sent the following telegram to Palmer and Parker Company: " Charter party Mount Shasta signed this day established a letter of credit favor Victor S. Fox & Co.

Commericial Trust Co. of N. Y." Upon receipt of the telegram on July 15, 1920, Palmer and Parker Company and the defendant, the American Trust Company, signed and forwarded to " Victor S. Fox & Co. Inc., New York City, New York " the following letter, which is the basis of this action and which, the plaintiff claims, constituted an acceptance of the draft above referred to, or, if not an acceptance, a promise to accept, for the breach of which the action may be maintained. " Referring to the charter party between Victor S. Fox & Co. Inc., and Palmer & Parker Co., dated July 14th, 1920, and covering steamer ' Mount Shasta ' with a cargo of logs from Gold Coast, West Africa, to Boston, Mass., we beg to advise you that when the cargo of the ' Mount Shasta ' has been discharged at Boston and the out turn weight of same has been agreed upon by both parties, you are hereby authorized to draw on Palmer & Parker Co. for the balance of the freight due you in accordance with the terms of the charter party, and we hereby guarantee that if draft is in order, it will be paid on presentation to the American Trust Co., at Boston." The trial judge found as a fact that " This letter was sent in compliance with the provision of the charter quoted above, that the charterers on signing the charter party would establish a letter of credit with a New York bank for the balance of the freight to be payable upon the out-turn weight of the cargo. While the letter does not purport to establish a credit with a New York bank, but to establish one with a Boston bank, its terms were acceptable to Fox and Company, and may fairly be considered to have been adopted by both parties as performance, by way of substitution, of the provision of the charter calling for the establishment of a credit with a New York bank."

On July 16, 1920, Victor S. Fox and Company borrowed $75,000 of the plaintiff, the Commercial Trust Company of New York, and executed and delivered to it, as security, an instrument which purported to be an assignment of the charter party between Victor S. Fox and Company and Palmer and Parker Company; the instrument also contained an assignment to the Commerical Trust Company of $75,000

out of the freight moneys received from said charter, the total sum of which would be approximately $130,000. This single instrument of assignments was also executed by the Commercial Trust Company which agreed to hold the charter party upon the terms and conditions contained therein " and to credit the account of Victor S. Fox & Co. Inc., Agents, with any surplus." " At the same time the charter party and the letter of July 15, were handed to the plaintiff bank, and the loan was made in reliance on both the letter of July 15, the charter party and the accompanying assignment. The note thus secured fell due August 30, 1920, and was renewed for thirty days. On September 16, 1920, the plaintiff made a further loan to Victor S. Fox and Company of $40,000 upon the same security and took from it an assignment in substantially the same terms as that of July 16. The note itself contained this clause: ' having deposited with said trust company, as collateral security for the payment of this note, freight moneys as per assignment attached.' "

The charter party provided that one half of the freight, as estimated, should be paid at the time the loading was completed; and on September 21, 1920, on receiving a cable message to this effect, Palmer and Parker Company sent its check for $52,500 to Victor S. Fox and Company, which indorsed it to the plaintiff bank. This reduced the first loan which the plaintiff had made to Victor S. Fox and Company, from $75,000 to $22,500; and on September 29, 1920, a new note was given for this amount which contained the clause: " having deposited with said trust company, as collateral security for the payment of this note, assignment attached covering charter party, freight moneys and guaranty." Accompanying this note was a third assignment, covering the charter party and the right to receive and collect the freight money, and also specifically covering the letter of July 15, 1920, signed by the defendant, and securing not only the note renewing the unpaid proportion of the first loan, amounting to $22,500, but also the second loan of $40,000. On September 29, 1920, the Commercial Trust Company by writing, on the same instrument, agreed

to hold said assignment on the terms and conditions therein set forth.

On October 4, 1920, the Commercial Trust Company notified Palmer and Parker Company by letter that Victor S. Fox and Company had assigned to it all the rights of Victor S. Fox and Company under the charter party and " your acceptance under date of July 15, 1920, guaranteed by the American Trust Company;" and that the Commercial Trust Company was entitled to receive all money due and to become due thereunder and that all payments should be made to the Commercial Trust Company. To this letter there was no reply. On November 11, 1920, the Commercial Trust Company sent a letter of similar import to the American Trust Company, and a copy of it to Palmer and Parker Company. There was no reply to either of these letters.

On February 19, 1921, the Mount Shasta arrived in Boston. The out-turn weight of the cargo was agreed on as three thousand six hundred fifteen and ninty four thousandths tons, for which the freight at $25 per ton was $90, 377.35. Deducting the credit for the amount paid by Palmer and Parker Company, viz., $52,500, the balance for freight was $37,877.35. On April 8, 1921, the plaintiff drew its bill on the defendant bank in the sum of $56,683.60. The excess over $37,877.35 (the balance for freight) was for demurrage charges — $12,900 for demurrage at the loading ports in Africa and $5,906.25 at Boston. Payment was refused and the bill protested. When the bill was drawn and when the writ issued, the unpaid balance of loans made to Victor S. Fox and Company by the plaintiff bank on the security of the foregoing assignments amounted to at least $62,500.

In answer the defendant set up and has argued at great length five alleged grounds of defence; the fifth being " That the draft drawn and presented was not ' in order ' within the meaning of the contract, — (a) because it was not drawn by Fox and Company, Incorporated; (b) because it was not for the ' balance of the freight due ' only, but included also large amounts for demurrage; (c) because the amount

included in the draft for demurrage was in any event too large."

Putting to one side any consideration of the value and force of the several defences other than the defences set up in the answer above quoted, numbered " 5," it is plain that the plaintiff, to recover for a breach of the agreement signed by the defendant, was bound to establish two essential and fundamental facts: (1) that there had been detention of the vessel at Boston by Palmer and Parker Company beyond the lay days allowed by the charter party, and (2) that the word " freight," in the agreement of July 15, 1920, included demurrage for all delay for which Palmer and Parker Company were responsible.  The presiding judge found there was no unreasonable delay on the part of the charterers, Palmer and Parker Company, in receiving the cargo from the vessel at Boston.  The pertinent facts reported are as follows: The vessel arrived at Boston in the forenoon of Saturday, February 19, 1921, and unloading was not begun until the morning of the following Thursday. The charter party in clause 4 provided that " lay days for . . . discharging shall be as follows commencing from the time the captain reports his vessel ready to . . . discharge cargo; berth available or not, . . . cargo to be received as fast as vessel can deliver in suitable hours and weather, Sundays and Holidays excepted. . . . discharging to be for account of steamer.  Steamer's obligation to cease when logs are discharged on wharf or wherever designated by Charterers."  Another paragraph, which appeared after the signatures of the parties, was as follows: " It is hereby understood and agreed that lay days for discharging, if required, shall not commence until forty-eight (48) hours after captain reports vessel ready to discharge cargo."  Upon arrival of the vessel the captain sent notice to Palmer and Parker Company that the vessel was ready to discharge its cargo.  On receipt of the notice Palmer and Parker Company immediately notified the agents of the vessel that the company claimed the forty-eight hours allowed it under the charter party to prepare to receive the cargo. The Tuesday, after the Saturday on which the vessel arrived

was a holiday, February 22. The defendant claimed and the judge ruled that the forty-eight hours to which Palmer and Parker Company was entitled should not include Sunday and Tuesday, the holiday. The plaintiff contends that this ruling was wrong because, in the absence of fraud, the provision of the charter party that lay days for discharging begin " from the time the captain reports his vessel ready to . . . discharge cargo " fixes an absolute time for the beginning of the lay days, which is not extended by the provision that lay days for discharging, if required, shall not commence until forty-eight hours after captain reports vessel ready to discharge cargo. We think the agreement in reference to the forty-eight hours should be read as incorporated with clause 4 of the charter party; and that so incorporated, the provisions of clause 4, as to lay days suspended the beginning of lay days to cover Sundays and holidays and forty-eight hours in addition " if required," that is, if demanded by the charterer.

It is conceded by the plaintiff that, if the interpretation of these provisions is correct, demurrage would not begin until 8 A. M. on Thursday morning, the period of time when discharging actually began. Upon the fact that the surveyor chosen by the parties to measure the logs for the purpose of determining the amount of freight did not arrive in Boston until Thursday, February 24, the judge found that the vessel was not in fact ready to discharge before Thursday morning, when discharging began. In view of these findings of facts, which are supported by the reported facts and evidence, it is plain the plaintiff did not establish a right to demurrage at Boston, with the result that the draft was not " in order " because it substantially exceeded the amount which the defendant guaranteed to pay.

Having regard to the nature of the plaintiff's claim for damages, we think this court should not now determine under the provisions of G. L. c. 231, § 124, the amount, if any, which the defendant would have been obligated to pay upon presentation of a draft which conformed to the terms of the agreement. It results that judgment should be entered for the defendant.

*So ordered.*