NASHUA AND LOWELL RAILROAD CORPORATION *vs.* BOSTON
AND LOWELL RAILROAD CORPORATION.

Suffolk.   March 23, 24, 1892. — October 21, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Arbitrament and Award — Corporation — Contract — Ultra Vires.*

If the parties to a submission to arbitration agree orally that certain items of the claims submitted shall be heard and determined separately and in the first instance by the arbitrator, and join in a request for such hearing and determination to the arbitrator, who assents thereto, and full hearings on these items are accordingly had, and arguments are made, and an award upon them is reduced to writing and duly published by reading the same to the parties, a subsequent revocation of the submission to arbitration does not affect such award, which is a valid defence to an action by one of the parties against the other upon a claim covered by the award.

The directors of two railroad corporations, the A. corporation and the B. corporation, respectively, executed an agreement for the joint operation of their roads, under the management of one agent, for a certain limited time, which contained the following stipulation . " The road-bed, bridges, superstructures, depots, buildings, and fixtures of each road shall be kept as near as may be in like relative repair from their present state and condition." There was no express ratification or adoption of this agreement by the stockholders of the two corporations until the next year, when the stockholders of each voted to extend the contract for twenty years. Meanwhile, committees of the directors of each corporation had agreed that the B. corporation was in an inferior condition to that of the A. corporation, that this inferiority was equivalent to the cost of replacing three hundred tons of old rails with new, and that, in the final settlement, the iron of the B. corporation should be left in the same relative worse condition, or otherwise its improved relative condition should be paid for by the B. corporation on its separate account. This adjustment was adopted by the directors of each corporation. At the termination of the contract, the rails of the B. corporation were not in a relatively worse condition than those of the A. corporation, and the cost of replacing three hundred tons of old rails with new at that time would have been $9,711.88. This improvement in the condition of the road of the B. corporation was paid for out of the joint fund, thirty-one per cent. of which belonged to the A. corporation. *Held,* upon a bill in equity by A. against B. for an account, that A. was entitled to recover thirty-one per cent. only of $9,711.88, and not the whole of that sum.

In an action between two railroad corporations, one chartered in this Commonwealth and one in another State, upon a claim arising out of a contract for the joint operation of the two railroads, this court cannot declare the contract *ultra vires,* no such defence being set up in the answer or taken in the lower court, and no provision of statute nor decision in either State being cited in support of the defence, and there being nothing to show that the contract was ever objected to by the Legislature or by any public board or officer of either State.

CONTRACT, referred to an auditor, and, upon the coming in of the auditor's report, amended into a bill in equity for an account, upon the agreement by the plaintiff that the report should be treated as a master's report. In the Superior Court, a decree was ordered for the plaintiff; and the defendant appealed to this court. The facts appear in the opinion.

*J. H. Benton, Jr.*, for the defendant.

*F. A. Brooks*, (*A. S. Hall* with him,) for the plaintiff.

ALLEN, J. The plaintiff's claim consists of two items: first, the sum of $2,574.32, being thirty-one per cent of the value of materials for railroad construction owned by the plaintiff and by the defendant in the proportion of thirty-one per cent by the plaintiff and sixty-nine per cent by the defendant, and used by the joint manager of the plaintiff's and defendant's railroads in the construction of the Middlesex Central Railroad; and, secondly, the sum of $9,711.88, that being the agreed cost of replacing three hundred tons of old rails with new, in order to make the plaintiff's railroad in as good a condition of relative repair at the expiration of a contract for the joint operation of the two railroads as it was at the beginning.

Amongst other defences, the defendant relied on an award of arbitrators. These claims have been included in a submission to arbitration, and an award made in favor of the defendant. But it was held in *Boston & Lowell Railroad* v. *Nashua & Lowell Railroad*, 139 Mass. 463, that the final award of the arbitrators, embracing all the matters submitted to them, was invalid, because before the making and publication thereof the submission to arbitration had been revoked. As to the final award, the matter is *res judicata*. This ground of defence, therefore, is not available against the second claim. It is, however, contended by the defendant, that in reference to the plaintiff's first claim the arbitrators made an earlier and partial award in favor of the defendant before the revocation of the submission, and that the plaintiff is bound by that award.

The former action brought by the present defendant against the present plaintiff was on the final award, and was brought to recover the amount awarded to be paid by the present plaintiff to the present defendant. The final award was held to be invalid, and the action failed. The decision of that case did not

involve the validity of the earlier award. But now the question arises whether the earlier award, covering only a part of the matters submitted, was valid or invalid.

If the original submission alone is looked at, this award would clearly be invalid, because it did not embrace all the matters submitted. In the judgment rendered by this court in the former case, it was said, "It has not been found as a fact, that the parties agreed that these items should be the subject of a separate award." 139 Mass. 470. But now the circumstances under which the earlier and partial award was made are fully set forth in the auditor's report, and they sufficiently show such an agreement. It was competent in law for the parties to make an oral agreement modifying the terms of the submission so as to permit a separate and partial award; they did make such agreement; they joined in requesting the arbitrators to hear and determine certain items separately and in the first instance; the arbitrators assented to this course of proceeding ; full hearings on these items were accordingly had, arguments were made, and the award upon them was reduced to writing and duly published by reading the same to the parties. This award covered the plaintiff's first claim in the present suit. Under these circumstances the plaintiff is bound by that award, and the subsequent revocation of the submission to arbitration did not affect it. *Loring* v. *Alden*, 3 Met. 576. *Byam* v. *Robbins*, 6 Allen, 63. *Rundell* v. *La Fleur*, 6 Allen, 480. *Blakely* v. *Graham*, 111 Mass. 8. *Peabody* v. *Rice*, 113 Mass. 31. *Coon* v. *Allen*, 156 Mass. 113. The plaintiff, therefore, is not entitled to recover upon its first claim, the award being a good defence against it.

The plaintiff's second claim rests primarily upon a clause in an agreement executed on January 29, 1857, by the directors of the plaintiff and of the defendant respectively, for the joint operation of their roads under the management of one agent for a certain limited time. By that agreement both companies were to surrender to the joint management the entire control of their respective roads and other property, subject to certain exceptions. Article 8 of the agreement contained the following stipulation : " The road-bed, bridges, superstructures, depots, buildings, and fixtures of each road shall be kept as near as may be in like relative repair from their present state and

condition." There was apparently no express ratification or adoption of this agreement by the stockholders of the two companies until September 14, 1858, when the stockholders of each company voted to extend the contract for twenty years. Meanwhile, committees of the directors of the plaintiff and of the defendant had agreed that the Boston and Lowell Railroad was in an inferior condition to that of the Nashua and Lowell Railroad, and that this inferiority was equivalent to the cost of replacing three hundred tons of old rails with new, and that in the final settlement the iron of the Boston and Lowell Railroad should be left in the same relative worse condition, or otherwise its improved relative condition should be paid for by the Boston and Lowell Railroad on its separate account. This adjustment was adopted by the directors of each corporation. In fact, at the termination of the contract for the joint operation of the roads, the rails of the defendant were not in a relatively worse condition than those of the plaintiff, and the cost of replacing three hundred tons of old rails with new at that time, it was agreed, would have been $9,711.88.

It is not stated in express terms that this improvement in the condition of the defendant's railroad was paid for out of the joint fund, but we think this is to be inferred; that is to say, the joint fund to the amount of $9,711.88 had been used for the improvement of the Boston and Lowell Railroad in excess of what was allowed by the contract. That amount should have been paid by the Boston and Lowell Railroad corporation with its own funds. Instead of that, the joint fund was used for that purpose, and thirty-one per cent of the joint fund belonged to the plaintiff.

The plaintiff now assumes that it has a right to insist that the defendant shall pay from its own funds to the plaintiff the full sum of $9,711.88, and its claim, as stated in the pleadings, and also as recognized and adopted by the Superior Court, goes on that footing. There has been no discussion at the bar on this point, but we are unable to see how the loss to the plaintiff from the use of the joint fund for the benefit of the defendant in excess of what was allowed by the contract can be greater than the plaintiff's proportionate interest in that joint fund, that is to say, thirty-one per cent of $9,711.88.

The defendant now contends that the contract for the joint

operation of the two roads was *ultra vires*. This ground of defence was not set up in the answer, and there is nothing to show that it was taken in this case in the Superior Court, or in the Supreme Court of the United States when the same contract was before that tribunal in another suit. *Nashua & Lowell Railroad* v. *Boston & Lowell Railroad*, 136 U. S. 356. No provision of statute or decision either in Massachusetts or New Hampshire has been cited in support of it.

The statutes of New Hampshire, for all that we know to the contrary, may have expressly authorized the contract. We are not aware of any provision of our own statutes expressly forbidding such a contract. By St. 1869, c. 459, authority to consolidate the two companies was given, but no consolidation was ever effected. There is nothing to show that the contract was ever objected to by the Legislature or by any public board or officer of either Massachusetts or New Hampshire. Under this state of things we are unable to declare that the contract was *ultra vires*.

The plaintiff is, therefore, upon our construction of the master's report, entitled to recover $3,010.68, being thirty-one per cent of $9,711.88, and interest to be added.

*Judgment accordingly.*