CITY OF WORCESTER *vs.* WORCESTER AND HOLDEN STREET RAILWAY COMPANY.

Worcester.   December 11, 1906. — February 27, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Municipal Corporations.   Street Railway.   Contract,* Validity.   *Pleading, Civil,* Answer.   *Corporation, Ultra vires.*

Since the enactment of St. 1898, c. 578, the board of aldermen of a city or the selectmen of a town in granting a location to a street railway company cannot impose a condition that the company shall at all times maintain the pavement between its rails and tracks and for a space of eighteen inches outside thereof in good order and repair.

Whether under St. 1898, c. 578, § 13 (R. L. c. 112, § 7), the board of aldermen of a city in granting a location to a street railway company may not impose a condition that if in the construction of the tracks of its railway it shall become necessary in the judgment of the city engineer to widen the wrought part of, change the grade of or make general or specific repairs upon the whole or any portion of the streets where the tracks are laid, such work as the city engineer may direct shall be done at the expense of the railway company, *quaere.*

In July, 1901, the board of aldermen of a city in granting a location to a street railway company imposed a condition that the company should at its own expense and cost pave with block paving between the rails and tracks, and for a space eighteen inches outside thereof, and should maintain such pavements at all times in good order and repair.   The street commissioner and the mayor in behalf of the city made an agreement with the street railway company that on a certain street to which the requirement applied it would be better for every one concerned to have macadam used instead of block paving outside the rails, that the city should do the work of macadamizing and that the railway company should pay for it a stipulated price.   The city did the work in accordance with the agreement and brought an action of contract against the railway company for the stipulated price.   *Held,* that, irrespective of the validity of the condition imposed by the grant of location, the contract was a valid one which the parties had a right to make, and, even if the authority of the street commissioner and the mayor to represent the city had been disputed, which it was not, the bringing of the action was a ratification equivalent to an original authority.

Whether in an action on a contract the defence that the contract is invalid is open under an answer containing only a general denial, here was not considered because the contract sued upon was held to be valid.

Whether one who owes money to a corporation under the terms of a contract which the corporation fully has performed, when sued upon the contract, can set up the defence that it was *ultra vires,* here was not considered because the contract was held to be within the corporate powers of the plaintiff.

CONTRACT on an account annexed as stated in the first paragraph of the opinion.   Writ dated November 19, 1903.

At the trial in the Superior Court *Aiken,* C. J. submitted to the jury the question " Was $2,500 or $3,500 the amount agreed upon for what was to be done on Grove Street ? " The jury answered " $3,500." The jury returned a verdict for the plaintiff in the sum of $4,671.82; and the defendant alleged exceptions.

The case was submitted on briefs.

*H. Parker, C. C. Milton & G. A. Gaskill,* for the defendant.

*J. F. Humes,* for the plaintiff.

KNOWLTON, C. J. The exceptions in this case relate to a single item in the plaintiff's account annexed, which is a charge of $3,500 for " labor furnished, and materials furnished and actually used in making repairs and alterations on Grove Street in. Worcester as per contract."

On July 22, 1901, the board of aldermen of Worcester granted a location to the defendant company for the construction of its railway. Among the " terms, conditions and obligations " imposed upon the defendant was a requirement that, " if, in the construction of said tracks, it shall become necessary in the judgment of the city engineer of the city of Worcester, to widen the wrought part, change the grade, work to grade, or to make general or specific repairs upon the whole or any portion of said streets, such work as he may direct shall be done at the expense of the said company," and another requirement that " said company shall, at its own expense and cost, pave with block paving between the rails and tracks, and for a space eighteen inches outside thereof," a certain part of the location, and shall " maintain said pavements at all times in good order and repair," etc.

There is no dispute that the street commissioner of Worcester and the mayor, representing the plaintiff, and duly authorized officers of the corporation agreed that on a certain street to which this last requirement applied, it would be better for every one concerned to have macadam used instead of block paving outside the rails, and agreed that the city should do the work of macadamizing and the defendant corporation should pay for it a stipulated price, which the jury have found to be $3,500. The plaintiff did the work according to the agreement. The defendant contends that the contract is not binding upon it because the requirement of the board of aldermen was illegal,

because the parties, without authority, undertook by the contract to provide for a departure from this requirement of the aldermen, and because the city had no right to make such a contract.

It is not necessary to consider the validity of the requirement. That part of it which provides that the defendant shall at all times maintain the pavement in good order and repair was doubtless unauthorized, after the enactment of the St. 1898, c. 578, § 13, (R. L. c. 112, § 7.) *Springfield* v. *Springfield Street Railway*, 182 Mass. 41. Notwithstanding this, there is much ground for contending that the first part of the requirement, as to the construction, was valid. *Selectmen of Gardner* v. *Templeton Street Railway*, 184 Mass. 294, 296. However that may be, there was work to be done on the street in which both the plaintiff and the defendant were interested, about which an order had been made by the board of aldermen, purporting to require the defendant to do the work. Under these circumstances the parties made the contract and the plaintiff performed its part of it. The city may be bound by such a contract. *Brookfield* v. *Reed*, 152 Mass. 568. *Arlington* v. *Cutter*, 114 Mass. 344. *Bell* v. *Boston*, 101 Mass. 506. It is not contended that the commissioner of streets and the mayor were not proper officers to represent the city in the transaction of the business. If that were disputed, the ratification of the contract, by bringing an action upon it, would be equivalent to original authority from the city. *Melrose* v. *Hiland*, 163 Mass. 303, 311.

It is plain that the defendant may bind itself by such a contract affecting its interest, and it is conceded that the officers representing it in the agreement were properly authorized.

The fact that this construction, which was thought to be the best for everybody concerned, is a departure from the order of the board of aldermen, does not affect the validity of the contract as between the parties to it. For these reasons the contract is binding upon the defendant.

There are other grounds on which the plaintiff contends that this defence is not open to the defendant, namely, that its only answer is a general denial, (see *Granger* v. *Ilsley*, 2 Gray, 521; *Suit* v. *Woodhall*, 116 Mass. 547,) and that *ultra vires* cannot be set up as a defence to avoid payment to a corporation which

has executed such a contract. See *Slater Woollen Co.* v. *Lamb,* 143 Mass. 420; *Nims* v. *Mount Hermon Boys' School,* 160 Mass. 177, 179, 180. These contentions need not be considered.

*Exceptions overruled.*