JAMES NOWELL & others vs. EQUITABLE TRUST COMPANY
& another.

Suffolk.    March 6, 1924. — September 19, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, & CARROLL, JJ.

*Trust Company*, Officers and agents, Ultra vires, Contract of guaranty.
*Pleading, Civil,* Answer.   *Practice, Civil,* Report.   *Agency,* Scope of
authority, Ratification by principal.   *Custom.*   *Contract,* Validity.
*Evidence.   Estoppel.*

*It is doubtful* whether, in an action against a trust company upon an alleged
instrument of guaranty which purported to be signed in behalf of the
defendant by its treasurer, it is open to the defendant to contend that
the signer of the instrument had no authority to sign in its behalf if the
answer does not deny the signature of the defendant nor allege lack of
authority of the person who signed its name.
At the trial of the action above described, there was the following evidence
bearing on the question of the authority of the treasurer to sign in be-
half of the defendant: testimony that the treasurer had signed other
instruments of like nature in the name of the defendant with the
knowledge of its president and other officers; evidence that the by-laws
of the defendant were not inconsistent with such authority; testimony
to the effect that the defendant's president, in early negotiations con-
cerning whether the defendant was liable upon the guaranty, made no
mention of the authority of the treasurer to sign in the defendant's
behalf and did not disavow it.   *Held,* that
    (1) Testimony as to the signature on other instruments by the
treasurer was competent;
    (2) Testimony as to the conduct of the president of the defendant
was competent on the question of the treasurer's authority and also
had a tendency to show a ratification of the authority by the defendant;
    (3) Assuming that the question of the authority of the treasurer
was open on the pleadings, the existence of such authority was for the
jury to determine on the evidence.
A private banker in the regular course of his business issued to an importer
a letter of credit whereby the importer was authorized to draw upon
the banker not exceeding a certain sum for the invoice cost of certain
merchandise, bills of lading to the banker's order to be attached to
each draft and duplicate invoice and a consular invoice with copy of
bill of lading to be sent directly to the banker.   The importer, by an
instrument in writing upon the back of the letter of credit, agreed to
place the banker in funds to meet the drafts before their due date and
recognized and admitted the ownership by the banker of merchandise
which might come under the operation of the agreement and the terms
of the letter of credit, and further agreed that, if the banker should
entrust the merchandise to him for sale or otherwise, he would hold it

or its proceeds to be applied in payment of amounts due the banker, and, in case of the insufficiency of the proceeds to meet such obligations, would pay the banker any balance due. Attached to the letter of credit and the agreement of the importer was an agreement by a trust company incorporated in this Commonwealth reciting that it did " guarantee, promise and agree, to and with " the banker that the importer would perform its agreement with the banker. In the course of business, the banker honored drafts of the importer, returned to him documents of title, and received from him trust receipts, so called, providing that the importer held the merchandise in trust as the banker's property with liberty to sell and deliver it to purchasers for the banker's account, the proceeds of any sale to be delivered to the banker to be applied by the banker in the first place toward payment of amounts due him by reason of the letter of credit, and in the second place to the payment of other indebtedness from the importer to the banker. The importer failed to fulfil his agreement and the banker brought an action against the trust company on the guaranty. *Held,* that

(1) It was manifest from numerous decisions of this court that the delivery of physical possession and the documents of title by the banker to the importer in return for trust receipts was a customary course of the business;

(2) The reference in the agreement by the importer with the banker to the event that the banker might entrust the merchandise to the importer plainly incorporated that method of transaction of business into the guaranty signed by the trust company;

(3) On the record, the delivery of the documents of title to the merchandise by the banker to the importer and the taking in place thereof of the trust receipts did not operate as a complete or *pro tanto* release of the obligation of the trust company as a guarantor.

In an action against a corporation for breach of a contract, a defence that the contract was *ultra vires* the corporation should be set up in the answer.

The mere fact that, in the report by a trial judge of an action of contract against a corporation, it is provided that " if upon the admissible evidence the plaintiffs are entitled to recover, then judgment is to be entered for them," does not open to the defendant the defence of *ultra vires* if it is not set up in its answer.

Where the record before this court upon a report by a trial judge of an action of contract against a corporation discloses that at the trial the plaintiff presented evidence calculated to overcome the force of *ultra vires* as a defence and that such evidence was admitted subject to exception by the defendant, and before this court the plaintiff presents an argument in support of the admissibility of such evidence which in substance is that the evidence was admissible as tending to show that the contract was not *ultra vires*, the plaintiff should not be heard to contend that the defence of *ultra vires* was not open to the defendant merely because it was not set up in its answer.

It is *ultra vires* a trust company incorporated in this Commonwealth to make a contract with a private banker guaranteeing the performance by an importer of a contract in writing between the banker and the

importer whereby the banker issued a letter of credit to the importer stipulating that he would advance funds for the cost of merchandise on drafts to which were attached bills of lading and consular receipts and invoices placing the title in the banker, and the importer agreed to put the banker in funds to meet the drafts when due and, if the title to the property were entrusted to him by the banker, to hold it or the proceeds of the sale of it in trust to pay the obligations due to the banker from him.

A custom of trust companies to guarantee letters of credit cannot make valid a contract of the character above described.

Where the record upon a report by a trial judge of an action against a trust company upon a contract of guaranty of the character above described fails to show any advantage accruing to the trust company from the performance by the banker of his contract on the letter of credit issued to the importer, the trust company is not estopped to rely on the defence of *ultra vires*.

CONTRACT by James Nowell, Barrett Wendell, Jr., Jerome D. Greene, Albert J. Sheldon, David Shaw, Charles H. Schweppe, Frederic W. Allen, Francis L. Higginson, Jr., N. Penrose Hallowell, George C. Lee, and James J. Storrow, copartners doing business under the firm name and style of Lee, Higginson and Company, against the Equitable Trust Company, a trust company incorporated under the laws of this Commonwealth, to require reimbursement of the sum of $25,483, paid by the plaintiffs upon a letter of credit issued to The J. F. Mosser Company, and $95.56 commission, the plaintiffs alleging that the defendant had guaranteed the performance by The J. F. Mosser Company of an agreement by it with the plaintiffs in reliance upon which the plaintiffs had issued to that corporation a letter of credit. Writ dated June 30, 1921.

In the Superior Court, the action was tried before *Lawton*, J.

The letter of credit of the plaintiffs to The J. F. Mosser Company was as follows:

" Lee, Higginson & Company
Boston, Mass.

" To                          Date          June 21, 1920.
     The J. F. Mosser Co., Inc.,   L. C. No.      3352.
         Buenos Ayres, Argentina.   Amount U. S. $50,000.
                                    Expires        August 21, 1920.

" Gentlemen:

" We hereby authorize you to draw on Lee, Higginson & Co., Boston or New York, at ninety days' sight, for any sum or sums not exceeding in all $50,000, say Fifty Thousand U. S. Dollars for the invoice cost of quebracho extract, to be purchased for account of The J. F. Mosser Co., Inc., Boston, and to be shipped to Boston or New York. Insurance to be effected here.

" All drafts drawn under this Credit must bear its number and date and the amount of each draft negotiated must be endorsed on the back hereof.

" Full sets of bills of lading made out to the order of Lee, Higginson & Co. or ' Order ' blank endorsed, with abstract of Invoice and Consular Invoice in duplicate, must be attached to the draft.

" A duplicate invoice and Consular Invoice, together with one copy of the Bill of Lading, must be sent promptly by the bank negotiating the draft direct to Lee, Higginson & Co., Boston. A letter certifying that this has been done must be attached to the draft.

" This Credit was advised by cable through the British Bank of South America.

" We hereby agree with the drawers, endorsers and bona-fide holders of bills drawn in compliance with the terms of this Credit that the same shall be duly honored on presentation at our offices in Boston or New York if drawn and negotiated on or before August 21, 1920.

" We remain, gentlemen,

Your obedient servants

(Signed) Lee, Higginson & Co."

Upon the back of the letter of credit was the following agreement:

" Boston, June 21, 1920.

" Messrs. Lee Higginson & Co.

Boston.

" Gentlemen:

" Having received from you the Letter of Credit, of which a true copy is on the other side we hereby agree to its terms, and in consideration thereof we bind ourselves to furnish

you, not later than one day before the maturity of the acceptance under it, with Boston or New York funds for the same amount.

" We hereby recognize and admit the ownership of Lee, Higginson & Co., in and their right to the possession and disposal of all goods and the proceeds thereof for which Lee, Higginson & Co., may come under any engagements in virtue of this credit, as also to the possession of all bills of lading for and the policies of insurance on such goods, with the full power and authority of owners thereof, including power to sell the same or any part thereof at their discretion, either publicly or privately without notice to us, until such time as any indebtedness or liability existing as against us in favor of Lee, Higginson & Co. under the said Credit, or otherwise shall have been fully paid up and discharged. And in the event of Lee, Higginson & Co. entrusting said goods to us for the purpose of sale or otherwise we hereby consent that their right to repossess themselves of the same or of any proceeds thereof may be exercised at their discretion. Any proceeds of said goods coming into the hands of Lee, Higginson & Co. after deducting all expenses connected therewith, including all legal expenses and costs and commissions for sale or guarantee, are to be applied against the acceptance of Lee, Higginson & Co., under this credit or against any other indebtedness of ours to them, returning the surplus, if any, to us. In case, however, the net proceeds arising from any sale hereunder shall be less than the amount of our indebtedness to Lee, Higginson & Co. we promise to pay forthwith, after such sale, the amount of such deficiency with legal interest. We further agree to give you any security that you may at any time require for the fulfillment of our engagements to you.

" It is understood that you are not to be held responsible in any way for the description of quality of the merchandise shipped, or for the correctness of the documents presented by the parties in whose favor the Credit is opened.

" Any Credits which may be granted shall be considered under this agreement, and on the basis thereof with such variations if any, as may be arranged.

" The Marine Insurance to be done by us in Boston satisfactory to you.

" Your charge for commission under such Credit shall be 3/8 per cent. for three months Credits, and —— per cent. for —— months Credits for such parts as shall be used.

" All goods, etc., carried by you for our account and all securities which shall be received by you hereunder may be held and applied by you, also to secure all other indebtedness or liability existing, or which may hereafter arise from us to you.

" Any goods imported under this or any other Credit issued by you for our account, or their proceeds, whether the draft against same shall have been paid or not, or whether the goods shall have been delivered to us or not, may be held by you as general collateral security for our account with you, upon the terms and conditions herein contained.

" We agree to comply with all foreign and domestic governmental regulations in regard to the shipment of goods or the financing thereof, and to furnish certificates in that respect such and as you may at any time require.

" This obligation is to continue in force and to be applicable to all transactions, notwithstanding any change in the composition of the firm or firms, parties to this contract, or in the user of this Credit, whether such change shall arise from the accession of one or more new partners, or from the death or secession of any partner or.partners."

The J. F. Mosser Co., Inc.

(Signed) by W. Henry Cotting Atty for Treas."

Annexed to the foregoing, was the following:

" In consideration of the sum of One Dollar, to us in hand paid by Lee, Higginson & Co., Boston, the receipt whereof is hereby acknowledged we do hereby guarantee, promise and agree, to and with the said Lee, Higginson & Co., that the within-named The J. F. Mosser Co., Inc. of Boston will well and faithfully perform and fulfill everything by the foregoing agreement on their part and behalf to be performed and fulfilled, at the times and in the manner above provided.

" And we consent that said Lee, Higginson & Co. may afford ourselves such favor in their discretion, by way of

extension, renewal, and otherwise, as they may deem expedient, and we agree generally to hold said Lee, Higginson & Co. harmless against any and all loss, damage, expense and commissions, which may happen or accrue in consequence of or upon said letter or agreement, or the extension or renewal thereof.

" And we do hereby expressly waive and dispense with any demand upon the said The J. F. Mosser Co., Inc. and any notice of any non-performance on their part, holding us liable to Lee, Higginson & Co., under this Credit, equally with The J. F. Mosser Co., Inc. in all respects.

" 6–22–1920

Equitable Trust Company<br>(Signed) W. H. Pratt Treas.

(Documentary
   Stamp)

The J. F. Mosser Co., Inc.<br>(Signed) W. Henry Cotting Atty for Treas."

It appeared that, after receiving certain bills of lading, duplicate invoices and consular invoices for shipments material to this action, the plaintiffs, without notice to or the knowledge of the defendant trust company, delivered them to The J. F. Mosser Company, receiving a trust receipt signed by that corporation, which, so far as material, read as follows:

" Received from Lee Higginson & Co., Boston, the following described merchandise belonging to them specified in bill of lading per . . . [here followed the name of the steamship carrying the goods and a description of the goods] which we hereby agree to hold in trust or on storage, as their property, with proper insurance which shall be paid to them in case of loss, but with liberty to sell and deliver said merchandise to purchasers for account of said Lee, Higginson & Co., and we further hereby agree to deliver to the said Lee, Higginson & Co., the proceeds of any sale of said merchandise, whether in notes, cash, or other merchandise. The same to be applied by them, in the first place toward any payment of any drafts, or expense under Letter of Credit No. . . . shipped by them for our account; and

secondly, to the payment of any other indebtedness from us to the said Lee, Higginson & Co., with a further understanding that the said Lee, Higginson & Co., are not be be chargeable with any expense incurred by said merchandise. The intention of this agreement being to protect and preserve unimpaired the title and ownership of said Lee, Higginson & Co. in said merchandise and the proceeds thereof."

Other material evidence is described in the opinion. At the close of the evidence, a verdict for the defendant trust company was entered by order of the trial judge and the action was reported to this court on terms described in the opinion.

*A. A. Schaefer*, for the plaintiffs.

*C. S. Hill*, (*F. D. Bonner* with him,) for the defendant, Equitable Trust Company.

RUGG, C.J. This is an action of contract. The declaration alleges that the plaintiffs issued a letter of credit to The J. F. Mosser Co. Inc., engaged in trade in Argentina, in the sum of $50,000; that that company contemporaneously executed an agreement with the plaintiffs to furnish to them funds to meet all drafts drawn by it against the letter of credit one day before maturity; that thereafter, for a valuable consideration, the Equitable Trust Company and the Mosser Company executed and delivered to the plaintiffs a written guarantee of the complete performance by the Mosser Company of its agreement with the plaintiffs; that the Mosser Company failed in the performance of its agreement by not providing funds to meet certain drafts drawn by it against the letter of credit; wherefore the defendants owe the plaintiffs stated amounts. The Mosser Company did not appear and has been defaulted. The Equitable Trust Company alone makes defence. Its answer is a general denial, payment, and discharge of its obligations, if any be proved, by conduct of the plaintiffs.

The case was tried to a jury. At the conclusion of the evidence, a verdict was directed for the defendant and, at the request of the parties, the case was reported upon a stipulation that, if upon the admissible evidence the plaintiffs are entitled to recover, judgment may be entered for them in such sum as this court may determine.

The material evidence was that the letter of credit was issued in the regular course of the business of the plaintiffs as bankers, whereby they authorized the Mosser Company to draw upon them at ninety days' sight for any sum or sums not exceeding $50,000 for the invoice cost of quebracho extract, bills of lading to order of plaintiffs to be attached to draft, duplicate invoice and consular invoice with copy of bill of lading to be sent directly to plaintiffs, with other stated conditions. On the back of a duplicate copy of the letter of credit was an agreement directed to the plaintiffs and signed by the Mosser Company, wherein the latter agreed to furnish them on the day before the maturity of any acceptance under the letter of credit funds of the same amount. There also was recognition and admission of the plaintiffs' ownership of all goods and the proceeds thereof for which they might come under engagement by virtue of the letter of credit and possession of all bills of lading for and insurance on such goods, with power to sell. In the event of the plaintiffs entrusting such goods to the Mosser Company for sale or otherwise, it consented that they might repossess themselves of the same or any proceeds thereof, to be applied on its indebtedness to the plaintiffs, and, in case of insufficiency to meet same, to pay the amount forthwith, together with other undertakings not pertinent to the present issue. This agreement throughout was subsidiary and ancillary to the furnishing of funds to meet drafts drawn against the letter of credit. It had to do also with the relations of the parties to the goods which it was the obvious purpose of the letter of credit to enable the Mosser Company to import. Physically attached to this agreement was a guaranty reciting the consideration of $1.00 in hand paid by the plaintiffs, the receipt of which was acknowledged, whereby the Equitable Trust Company did " guarantee, promise, and agree, to and with " the plaintiffs that the Mosser Company would perform its agreement with the plaintiffs. This guaranty was signed in the name of the trust company by one Pratt, its treasurer. The present action is brought on this guaranty.

The defendant has argued that Pratt had no authority to

execute the guaranty in its name. It is doubtful whether this point is open under an answer in which there is no denial of the signature or of the authority of the officer affixing it. G. L. c. 231, § 29. *Kendall* v. *Carland*, 5 Cush. 74. Without discussing that point, there was evidence of the authority of Pratt. There was testimony that he had signed other instruments of like nature in the name of the trust company with the knowledge of its president and other officers. That testimony was competent as tending to show an established course of business. The by-laws of the defendant were not inconsistent with such authority. Under R. L. c. 116, §§ 7, 8, now G. L. c. 172, §§ 12, 13, it was within the power of the trust company to authorize the treasurer to execute contracts in its name. Testimony, to the effect that the president of the defendant, in the early negotiations with the plaintiffs concerning the liability on which the present action is founded, made no question of the authority of Pratt and did not disavow it, was competent on this point. It had also some tendency to show ratification of his act even if originally without authority. *Boice-Perrine Co.* v. *Kelley*, 243 Mass. 327, 331, and cases there collected. Conferring of such authority was within the power of the defendant. The whole matter was a fact to be determined by the jury. *Produce Exchange Trust Co.* v. *Bieberbach*, 176 Mass. 577. *Beacon Trust Co.* v. *Souther*, 183 Mass. 413. *Forgeron* v. *Corey Hill Garage, Inc. ante*, 163, and cases there collected. *Merchants' Bank* v. *State Bank*, 10 Wall. 604. The case at bar is distinguishable from *Sears* v. *Corr Manuf. Co.* 242 Mass. 395, and similar decisions.

The delivery of the documents of title of the goods imported upon the strength of the letter of credit by the plaintiffs to the Mosser Company and the taking in place thereof of trust receipts did not operate as a complete or *pro tanto* release of the obligation of the guarantor of the letter of credit. The principle that surrender by a creditor of security for its debt without the consent and to the injury of the surety releases the surety to that extent has no application to the facts here disclosed. The relation between the plaintiffs and the Mosser Company was that of banker and importer,

the banker furnishing the letter of credit whereby the purchase of the imported goods may be accomplished and the importer taking all the risks and being entitled to all the profits of the transaction. The delivery of physical possession and the documents of title by the banker, who is the owner of the imported goods, to the importer in return for trust receipts is the customary course of the business. That is manifest from numerous decisions, where the nature of the relation between the banker and importer and of trust receipts has been explained. *Moors* v. *Wyman*, 146 Mass. 60. *Peoples National Bank* v. *Mulholland*, 224 Mass. 448, 451; *S. C.* 228 Mass. 152, 155, and cases collected. *Brown* v. *Green & Hickey Leather Co.* 244 Mass. 168. *T. D. Downing Co.* v. *Shawmut Corp. of Boston*, 245 Mass. 106. There is nothing on this record to indicate that the guaranty was not signed by the defendant with reference to this well understood course of conduct between the banker and the merchant. The agreement of the Mosser Company, which was guaranteed by the defendant, contains express reference to the event that the plaintiffs might entrust the imports to the Mosser Company for sale or otherwise. This reference plainly incorporates into the guaranty that method of transacting the business. In such circumstances delivery of the documents of title by the plaintiffs to the Mosser Company in return for its trust receipts was not a surrender of security contemplated by the guaranty. The title remained in the plaintiffs under the trust receipts. It seems manifest from this record that the guaranty was made with reference to that course of trade and that the defendant cannot complain of it.

The defendant urges that the contract of guaranty was *ultra vires* the trust company. As matter of pleading, that defence ought to have been set up in the answer. This point seems not to have been expressly decided hitherto by this court, although mentioned incidentally. It is the necessary result of recognized general principles. Contracts of a corporation commonly are presumed to be within its lawful power until the contrary is made to appear. Illegality of a contract, unless of such nature as to shock the

conscience or to be inherently wrong, or unless patent upon the plaintiff's own case, usually must be pleaded. G. L. c. 231, § 28. *Granger* v. *Ilsley,* 2 Gray, 521. *Suit* v. *Woodhall,* 116 Mass. 547. *Nashua & Lowell Railroad* v. *Boston & Lowell Railroad,* 157 Mass. 268, 272. *Worcester* v. *Worcester & Holden Street Railway,* 194 Mass. 228. *O'Brien* v. *Shea,* 208 Mass. 528, 534–536. *Whittingslow* v. *Thomas,* 237 Mass. 103. *Coughlin* v. *Royal Indemnity Co.* 244 Mass. 317. *Express Co.* v. *Railroad Co.* 99 U. S. 191, 199. *Railway Co.* v. *McCarthy,* 96 U. S. 258, 267. *Providence Engineering Corp.* v. *Downey Shipbuilding Corp.* 294 Fed. Rep. 641, 659. *Jacobs* v. *Monaton Realty Investment Corp.* 212 N. Y. 48, 56. *Knapp* v. *Tidewater Coal Co.* 85 Conn. 147.

The defence of *ultra vires* is not open merely because under the terms of the report based upon the stipulation of the parties it is provided that " if upon the admissible evidence the plaintiffs are entitled to recover, then judgment is to be entered for them." As matter of construction, this means judgment may be entered for plaintiffs if they are entitled to recover upon the evidence admissible under the pleadings. *Park & Pollard Co.* v. *Agricultural Ins. Co.* 238 Mass. 187, 195. *Foss* v. *Lowell Five Cents Savings Bank,* 111 Mass. 285, 287. *Elliott* v. *Worcester Trust Co.* 189 Mass. 542, 544. It is not the equivalent of a submission upon a case stated where all questions of pleading ordinarily are waived. *Brettun* v. *Fox,* 100 Mass. 234. *Elliott* v. *Worcester Trust Co.* 189 Mass. 542, 544. *Ward* v. *Great Atlantic & Pacific Tea Co.* 231 Mass. 90, 92. *Bartlett* v. *Tufts,* 241 Mass. 96, 99.

The case, however, seems to have been fully tried on this point. Evidence presented by the plaintiffs, calculated to overcome the force of *ultra vires* as a defence, was admitted subject to the exception of the defendant. That evidence was to the effect that it was the custom among trust companies to guarantee letters of credit. Its relevancy upon any other issue is not perceived. In behalf of the plaintiffs, the argument at the bar in support of the admissibility of that evidence was that it bore upon the incidental or implied powers of a trust company and in general supported the

contention that the express powers granted by the statute to the defendant were broad enough, in the light of such prevailing practices among trust companies, to render legal and binding the guaranty of the defendant on which this action rests. That argument is in substance simply that such evidence tends to show that a contract of that nature is not *ultra vires.* When a party has tried his case on the theory that evidence is competent, but which is not competent merely because of an omission in pleading, and he has not directed the attention of the trial court to that omission, and his evidence has been received and considered, he ought not ordinarily to be allowed in this court to rely upon that omission in pleading. *Ridenour* v. *H. C. Dexter Chair Co.* 209 Mass. 70, 78, and cases there collected. *Walker* v. *Russell,* 240 Mass. 386. *Ryder* v. *Ellis,* 241 Mass. 50, 56. *Aikey* v. *Gardner,* 243 Mass. 77, 85. This is especially true of the defence of *ultra vires* which, so far as concerns the present case, raises a pure question of law almost, if not wholly, dissociated from evidence. The answer might easily have been amended if its inadequacy in this particular had been mentioned at the trial. The case at bar is distinguishable in this particular from the large class of cases, illustrated by *Granara* v. *Jacobs,* 212 Mass. 271, where rulings have been made presumptively on the pleadings, and from the other large class of cases illustrated by *Parrot* v. *Mexican Central Railway,* 207 Mass. 184, where a party has confined his trial conduct strictly within the pleadings and is permitted to avail himself of whatever legal rights arise therefrom. *Proctor* v. *Dillon,* 235 Mass. 538, 540. *United States* v. *Nixon,* 235 U. S. 231, 236. The ruling of the court below must be presumed to have been rested upon all the evidence which was admitted, including that introduced by the plaintiffs on the subject of *ultra vires.* It was right upon that ground and upon no other.

In view of the course of the trial, the plaintiffs are not in a position now to rely upon the omission by the defendant to set up in its answer the defence of its *ultra vires* to make the contract sued upon. The case is considered on its merits on this point.

The powers of the trust company at the time of these transactions were in substance, as far as here material, the same as those set out in G. L. c. 172. For convenience, reference will be made to the relevant sections of that chapter rather than to the sections of the statutes then operative. The general banking powers of a trust company are found in § 31 and the sections immediately following. By § 33 a trust company is empowered to advance money or credits on real estate in this Commonwealth, subject to limitations not here relevant, and on personal security, and to invest its money or credits in the stock, bonds or other evidences of indebtedness of foreign and domestic corporations and governments. By § 36 a trust company may " accept for payment at a future date drafts and bills of exchange drawn upon it, and issue letters of credit authorizing holders thereof to draw drafts upon it, or its correspondents, at sight or on time," with conditions not here material. By § 37 a trust company may " accept drafts or bills of exchange drawn upon it and growing out of transactions involving the import or export of goods, having not more than six months' sight to run " subject to certain limitations. " Such corporation may rediscount notes, drafts and bills of exchange arising out of actual commercial transactions." A trust company is clothed with whatever further incidental powers fairly may be implied from those expressly conferred and such as are reasonably necessary to enable it fully to exercise those powers according to common commercial and banking customs and usages. *Teele* v. *Rockport Granite Co.* 224 Mass. 20, 25.

A trust company invites deposits from the general public. It is empowered not only to conduct the general banking and other business already indicated; it also may have a savings department and a trust department, wherein large numbers of people may be concerned, with interests differing from those of ordinary commercial depositors. The customers of a trust company in all its departments are obliged in the nature of things to repose a high degree of trust and confidence in the fidelity and sagacity of the managers of such an institution. They must depend to a great extent upon

their honesty and good judgment. The embarrassment, confusion and suffering in business and other financial relations likely to follow in the wake of violations of law or unsound banking methods have been acutely illustrated in the recent failures of several trust companies in this Commonwealth. The business of banking is of such widespread public importance as to warrant and receive considerable governmental regulation for the general welfare.

The contract of guaranty upon which this action is founded does not fall within the specific enumeration of powers conferred upon a trust company already summarized. It was not an agreement to pay drafts or bills of exchange drawn on this trust company. It was not an acceptance of such instruments already drawn or to be drawn in the future. It was not the issuance of a letter of credit. The contract here in suit is closely akin to contracts well within the corporate powers of the trust company. It related to payment of drafts arising out of importations of goods and to liabilities primarily undertaken under a letter of credit. The drafts which were the subject of the guaranty were not drawn on the guarantor, but on the plaintiffs. The letter of credit was not issued by the defendant but by the plaintiffs. The security of the bills of lading and other papers and of the imports was not assured to the defendant but to the plaintiffs.

There must be a dividing line between business within and business beyond the corporate powers of a trust company. This contract grew out of transactions relating to the import of goods. But it cannot by any stretch of definition or description be rightly termed a draft or bill of exchange. A guaranty of the financial obligations incurred by an importer to another banker is different in kind from the business described in the sections delimiting the corporate powers of a trust company. It is not fairly incidental to the powers there conferred. All these considerations lead us to the conclusion that this contract of guaranty was *ultra vires* the trust company. *Ward* v. *Joslin,* 186 U. S. 142. *Gause* v. *Commonwealth Trust Co.* 196 N. Y. 134. *Border National Bank of Eagles Pass* v. *American National Bank of San Francisco,* 282 Fed. Rep. 73, 77, certiorari de-

nied, 260 U. S. 701. *Commercial National Bank* v. *Pirie,* 82 Fed. Rep. 799, 802. *Norton* v. *Derry National Bank,* 61 N. H. 589. *First National Bank of Moscow* v. *American National Bank of Kansas City,* 173 Mo. 153. *Hotchkin* v. *Third National Bank of Syracuse,* 219 Mass. 234. *Dresser* v. *Traders' National Bank,* 165 Mass. 120. *Flitner-Atwood Co.* v. *Fidelity Trust Co.* 249 Mass. 333.

The uncontradicted testimony at the trial was that it was the custom for trust companies to guarantee letters of credit. Such a custom cannot stand against a rule of law. *Conahan* v. *Fisher,* 233 Mass. 234, 238–242, and cases there collected. As was said by Chief Justice Gray in *Davis* v. *Old Colony Railroad,* 131 Mass. 258, 259–260, " A corporation has power to do such business only as it is authorized by its act of incorporation to do, and no other. It is not held out by the government, nor by the stockholders, as authorized to make contracts which are beyond the purposes and scope of its charter. . . . If it makes a contract manifestly beyond the powers conferred by its charter, and therefore unlawful, . . . a court of common law will sustain no action on the contract against the corporation. . . . There is a clear distinction . . . between the exercise by a corporation of a power not conferred upon it, varying from the objects of its creation as declared in the law of its organization, of which all persons dealing with it are bound to take notice; and the abuse of a general power, or the failure to comply with prescribed formalities or regulations, in a particular instance, when such abuse or failure is not known to the other contracting party." The case at bar falls within the first, not the second, of these classes. *Attorney General* v. *New York, New Haven & Hartford Railroad,* 197 Mass. 194, 197. *Timberlake* v. *Order of the Golden Cross,* 208 Mass. 411, 422. *Hampden Railroad* v. *Boston & Maine Railroad,* 233 Mass. 411.

The plaintiffs invoke the principle stated by Mr. Justice Knowlton in *Nims* v. *Mount Hermon Boys' School,* 160 Mass. 177, 179, 180, with respect to contracts by a corporation in violation of its charter: " . . . courts have frequently held that, while such contracts considered merely as contracts

are invalid, they involve no such element of moral or legal wrong as to forbid their enforcement if there has been such action under them as to work injustice if they are set aside. Courts have been astute to discover something in the nature of an equitable estoppel against one who, after entering into such a contract and inducing a change of condition by another party, attempts to avoid the contract by a plea of *ultra vires.* It is said that such a plea will not avail when to allow it would work injustice and accomplish legal wrong. *Leslie* v. *Lorillard,* 110 N. Y. 519. *Leinkauf* v. *Lombard,* 137 N. Y. 417, 423. Many cases might be supposed in which it would be most unjust to hold that one who had received the benefits of such a contract might retain them and leave the other party without remedy, as he might do in a supposable case, where another had put himself at a disadvantage on the faith of a contract with him to commit a crime." That is a just and salutary principle. It is applicable to cases where the corporation setting up the defence of *ultra vires* has received property or gain through reliance by others upon its own conduct and thereafter seeks to retain the advantage it thus has secured by interposing as a shield its unlawful conduct. It is applicable also to cases where the corporation sues to recover compensation for property or gain transferred by it to a defendant who tries to escape just responsibility by setting up *ultra vires* conduct of the corporation. That path to avoid payment for what he has received is closed to such a defendant. That principle would hold a guarantor accountable to the person guaranteed up to the amount of his undertaking for property coming to his hands upon the inducement of the guaranty regardless of the *ultra vires* of the guaranty. That principle is at bottom that, when in equity and good conscience one has property without right which ought to go to another, he cannot retain it. The action is not on the express *ultra vires* contract but on an implied contract to return or make compensation for property or money which he has no right to retain. *People's Bank* v. *National Bank,* 101 U. S. 181, 183. *Central Transportation Co.* v. *Pullman's Palace Car Co.* 139 U. S. 24, 60. *Aldrich* v. *Chemical National Bank,*

176 U. S. 618. *First National Bank of Aiken* v. *J. L. Mott Iron Works*, 258 U. S. 240. That is the principle on which rest *Vought* v. *Eastern Building & Loan Association,* 172 N. Y. 508, and *Eastern Building & Loan Association* v. *Williamson,* 189 U. S. 122. Numerous of our cases illustrate that principle in various aspects. *Prescott National Bank of Lowell* v. *Butler,* 157 Mass. 548. *Slater Woollen Co.* v. *Lamb,* 143 Mass. 420. *New York Bank Note Co.* v. *Kidder Press Manuf. Co.* 192 Mass. 391, 404. *Smith* v. *Stoughton,* 185 Mass. 329, 333. *Duggan* v. *Peabody,* 187 Mass. 349, 351. *Nashua & Lowell Railroad* v. *Boston & Lowell Railroad,* 164 Mass. 222, 223. *L'Herbette* v. *Pittsfield National Bank,* 162 Mass. 137.

The plaintiffs in the case at bar have not transferred anything of value to the defendant trust company. They have parted with money on account of the Mosser Company in reliance on the guaranty of the trust company. None of that money appears to have gone to the defendant. The trust company has not received anything directly or indirectly from the plaintiffs. The contract made by the plaintiffs with the Mosser Company has been executed by them depending upon the guaranty of the defendant. The record fails to show any advantage to the trust company from the performance by the plaintiffs of their contract on their letter of credit issued to the Mosser Company.

The rule as to *ultra vires* contracts often is stated in the form that " a corporation cannot avail itself of the defence of *ultra vires* when the contract has been, in good faith, fully performed by the other party, and the corporation has had the benefit of the performance and of the contract. . . . It may be that while a contract remains unexecuted upon both sides, a corporation is not estopped to say in its defence that it had not the power to make the contract sought to be enforced, yet when it becomes executed by the other party, it is estopped from asserting its own wrong and cannot be excused from payment upon the plea that the contract was beyond its power." *Vought* v. *Eastern Building & Loan Association,* 172 N. Y. 508, quoted with approval in *Eastern*

*Building & Loan Association* v. *Williamson,* 189 U. S. 122, 129.    *Lewis* v. *Fifth-Third National Bank of Cincinnati,* 274 Fed. Rep. 587, 594.    *Grand Valley Water Users' Association* v. *Zumbrunn,* 272 Fed. Rep. 943, 949.    That statement of the rule broadly interpreted might at first sight be thought to stretch to the facts here disclosed.    But it is to be noted that one element of the estoppel there formulated is that " the corporation has had the benefit of the performance of the contract."    We think it will be found that that principle has been applied only in instances where the fruits of the *ultra vires* contract have inured to the benefit of the corporation setting up *ultra vires* as a defence and that it has not been applied in instances where the benefit of the executed contract has gone to someone else.    No actual benefit is shown to have been conferred on the defendant by the performance of the contract here in suit.    That this must be the significance of the rule as thus phrased seems manifest from the strong and unequivocal statements of the rule of *ultra vires* in *California Bank* v. *Kennedy,* 167 U. S. 362, 367, 368, *McCormick* v. *Market Bank,* 165 U. S. 538, 550, *Citizens' Central National Bank* v. *Appleton,* 216 U. S. 196, *Merchants' Bank of Valdosta* v. *Baird,* 90 C. C. A. 338.

The plaintiffs do not rely on an implied contract arising from any gain to the trust company flowing from its guaranty.    They bring their action directly and wholly on the express contract of guaranty.    That contract is *ultra vires* the trust company.    As already pointed out, they cannot maintain an action on that contract.    They do not seek to recover the dollar recited in the contract of guaranty as having been paid by them to the trust company as consideration therefor.    A different question would be presented if the defendant had received any gain from the Mosser Company.

The doctrine of equitable estoppel often prevents a corporation from setting up *ultra vires.*    It frequently is invoked against purely business corporations.    But it cannot rightly be held applicable under the circumstances here disclosed against a corporation having such important public functions

as a trust company.   There is every reason to hold the rule of *ultra vires* with some strictness respecting trust companies.   The public interest that such a corporation shall not transcend its powers and embark in speculative or even legitimate business enterprises outside its lawful functions is peculiarly strong.

*Judgment on the verdict.*