THE COMMERCIAL TRUST COMPANY OF NEW YORK *vs.*
AMERICAN TRUST COMPANY.

Suffolk.    March 24, 1926. — May 26, 1926.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Contract*, Construction.   *Guaranty.*   *Trust Company*, Ultra vires.   *Practice, Civil*, Parties, Abatement.

A merchant, to whom a vessel had been chartered by agents of the owner, and a trust company incorporated in this Commonwealth together executed and delivered to the owner's agents in 1920 a letter stating that "when the cargo of the . . . [vessel] has been discharged at Boston and the out-turn weight of same has been agreed upon by both parties, you are hereby authorized to draw on . . . [the merchant] for the balance of the freight due you in accordance with the terms of the charter party, and we hereby guarantee that if draft is in order, it will be paid on presentation to the" trust company.   *Held*, that

(1) The letter in substance and effect was a guaranty by the trust company that if the draft was in order it would be paid by the merchant upon presentation to the trust company;

(2) The letter was not a letter of credit;

(3) The letter did not constitute a joint contract, but two separate and distinct agreements, one by the merchant and one by the trust company, and it was not necessary to join the merchant in an action against the trust company based on the letter;

(4) The trust company had no power in 1920 to enter into the contract of guaranty set out in the letter.

CONTRACT upon the agreement of July 15, 1920, described in the opinion.   Writ dated August 1, 1923.

In the Superior Court, the action was tried before *O'Connell*, J.

Material evidence and exceptions saved by the parties are described in the opinion.   The ninety-sixth and ninety-seventh requests by the defendant for rulings were as follows:

"96. That there is no evidence that the defendant received any consideration for its promise contained in the letter of July 15, 1920.

"97. That there is no evidence that the defendant made any gain or profit by reason of the giving of the said letter or from out the transactions connected therewith."

The judge ruled and instructed the jury that the letter of July 15, 1920, was a letter of credit.

The jury found for the plaintiff in the sum of $42,176.43. Both parties alleged exceptions.

*T. Hunt & J. W. Lowrance,* for the defendant.

*H. Williams, Jr.,* for the plaintiff.

CROSBY, J. This is an action of contract to recover for the defendant's refusal to honor four drafts successively drawn upon it by the plaintiff. The case was tried before a judge of the Superior Court and a jury; a verdict was returned for the plaintiff in the sum of $42,176.43 — the amount of the last, and smallest, draft with interest. The declaration is in sixteen counts, four based on each of the four drafts. The defendant's motion for a directed verdict was allowed as to the first twelve counts, and denied as to counts 13, 14, 15, and 16, subject to the defendant's exception.

On July 14, 1920, Victor S. Fox and Company (a corporation organized under the laws of the State of New York), agents of the steamship "Mount Shasta," executed a charter party of the Mount Shasta to Palmer and Parker Company (a Massachusetts corporation engaged in the business of importing and manufacturing mahogany) for the transportation of a cargo of mahogany logs from the Gold Coast of West Africa to Boston. By the terms of the charter the freight rate was $25 per ton, fifty per cent of the estimated amount of the freight to be payable when the vessel was loaded and the balance upon delivery of the cargo at Boston. The charter party also contained the following clause: "It is also hereby agreed and understood that Charterers will establish a Letter of Credit, upon signing charter party with a New York Bank for the balance of the freight to be payable upon the out-turn weight of the cargo, as agreed upon by both parties."

On July 14, 1920, the following telegram was sent by Victor S. Fox and Company to Palmer and Parker Company: "Charter party Mount Shasta signed this day establish a Letter of Credit favor Victor S. Fox & Co. Commercial Trust Company of N.Y." On the next day the following letter was sent to "Victor S. Fox & Co., Inc.":

"Dear Sirs: —

Referring to the charter party between Victor S. Fox & Co. Inc. and Palmer & Parker Co., dated July 14th, 1920, and covering steamer 'MOUNT SHASTA' with a cargo of logs from Gold Coast, West Africa, to Boston, Mass., we beg to advise you that when the cargo of the 'MOUNT SHASTA' has been discharged at Boston and the out turn weight of same has been agreed upon by both parties, you are hereby authorized to draw on Palmer & Parker Co. for the balance of the freight due you in accordance with the terms of the charter party, and we hereby guarantee that if draft is in order, it will be paid on presentation to the American Trust Co., at Boston.

Yours very truly,

Palmer & Parker Co.

(Sgd.) Wm. I. Palmer, Treas.

American Trust Company

Boston, Mass.

By (Sgd.) A. Bancroft

Asst. Treasurer"

It is upon this letter that the plaintiff bases its claim for recovery in this action.

On July 16, 1920, Victor S. Fox and Company borrowed $75,000 from the plaintiff, giving its note therefor, and executed and delivered as security an assignment of the charter party; the instrument also contained an assignment of $75,000 out of the freight moneys received from the charter. At the same time the charter party and letter of July 15 were handed to the plaintiff. On September 16, 1920, the plaintiff made a further loan to Victor S. Fox and Company of $40,000 and took its note therefor upon the same security and with an assignment similar to that of July 16.

The charter party provided that one half of the freight as estimated should be paid when the loading was completed, and on September 21, 1920, that time having arrived, Palmer and Parker Company sent its check for $52,500 to Victor S. Fox and Company which indorsed it to the plaintiff bank, thereby reducing the plaintiff's loan to Victor S. Fox and Company from $75,000 to $22,500. On September 29, 1920,

a new note was given for the last named amount, accompanied by a third assignment, securing not only the note renewing the unpaid balance of $22,500 on the first loan, but also the second loan of $40,000. The principal amount of these two notes with interest is owed by Victor S. Fox and Company to the plaintiff.

On October 4, 1920, the plaintiff notified the Palmer and Parker Company by letter that Victor S. Fox and Company had assigned to it all the rights of Victor S. Fox and Company under the charter party and "your acceptance under date of July 15, 1920 guaranteed by the American Trust Company"; and that the Commercial Trust Company was entitled to receive all the money due and to become due thereunder and that all payments should be made to the Commercial Trust Company. To this letter there was no reply. On November 11, 1920, the plaintiff sent a letter of similar import to the American Trust Company and a copy of it to Palmer and Parker Company. There was no reply to either of these letters.

On February 19, 1921, the Mount Shasta arrived in Boston. The out turn weight of the cargo was agreed upon between Palmer and Parker Company and the vessel's agents as three thousand six hundred fifteen and ninety-four thousandths tons, for which the freight at $25 per ton was $90,377.35. Deducting the $52,500 paid by Palmer and Parker Company, the balance due for freight was $37,877.35 — the amount, less interest, found by the jury. The plaintiff then drew a draft on the defendant for $56,683.60; the excess over the $37,877.35 was for demurrage charges — $12,900 at the loading ports in Africa, and $5,906.25 at Boston. Payment was refused and the draft was protested. In an action brought in the Superior Court by the plaintiff against the defendant upon that draft, it was held that no demurrage charges had accrued in Boston and therefore the draft was not in order because it included $5,906.25 which the defendant had not agreed to pay; judgment was entered for the defendant. That decision was approved by this court in 245 Mass. 166. It was said in the opinion at page 173, " . . . we think this court should not now determine under

the provisions of G. L. c. 231, § 124, the amount, if any, which the defendant would have been obligated to pay upon presentation of a draft which conformed to the terms of the agreement."

After that decision, on July 13, 1923, the plaintiff drew a draft on the defendant for $57,606.86 made up as follows: balance of freight $37,877.35; demurrage at loading ports in Africa $12,900; interest from April 21, 1921, to July 18, 1923 (the date of the presentation of the draft) $6,829.51. Payment was refused and the draft was protested. A second draft, dated July 14, 1923, for $50,777.35, was made up as follows: balance of freight $37,877.35; demurrage at loading ports in Africa $12,900. Payment was refused and this draft was protested. A third draft dated July 15, 1923, for $42,972.30, was made up as follows: balance of freight $37,877.35; interest from April 21, 1921 to July 18, 1923, $5,094.95. Payment was refused and the draft was protested. A fourth draft, dated July 16, 1923, was for $37,877.35, the balance of the freight only. Payment was refused and the draft was protested. The plaintiff thereupon brought this action declaring in four counts on each draft.

The defendant filed an answer in abatement alleging that Palmer and Parker Company was a necessary party to the action. This question was tried before a judge of the Superior Court who overruled the answer in abatement and the defendant appealed. The correctness of that ruling presents the first question for decision.

The letter dated July 15, 1920, sent to Victor S. Fox and Company, Inc. and signed by Palmer and Parker Company and by the defendant is an essential part of the plaintiff's case and is relied on by it to recover on every count of its declaration. Whether the letter imposes upon the signers a joint obligation depends upon the proper construction to be placed upon the words used. If, in an action at law, upon any view of the evidence, the findings of the trial judge can be supported as matter of law, they will not be reversed. *Sparhawk* v. *Sparhawk*, 120 Mass. 390, 392. *Seager* v. *Drayton*, 217 Mass. 571, 572. *Moss* v. *Old Colony Trust Company*, 246 Mass. 139, 143. *Andrews* v. *Board of Regis-*

*trars of Voters of Easton,* 246 Mass. 572, 576. It follows that the decision of the trial judge is conclusive unless there is no evidence upon which it may rest.

Upon a careful consideration of the entire text of the letter it is plain a joint contract does not appear but that there are two separate and distinct agreements: one on the part of Palmer and Parker Company authorizing Victor S. Fox and Company to draw on it, and thereby impliedly promising to pay a draft which may be so drawn, and the other a guaranty by the defendant that Palmer and Parker Company will make such payment. While the word "guaranty" will not always be construed in accordance with its ordinary meaning, but its correct interpretation will depend upon the intention of the parties as expressed by the language of the entire instrument, yet in this letter it seems manifest that its usual and ordinary meaning was intended, and that it was so understood by the plaintiff's vice-president in his letter to Palmer and Parker Company dated October 4, 1920, and in his letter to the defendant dated November 11, 1920. In each of these letters, the letter of July 15, 1920, is referred to in substance as the acceptance of Palmer and Parker Company and the guaranty of the defendant. In other words, we construe the letter in substance and effect as a guaranty by the defendant that if the draft is in order it will be paid by Palmer and Parker Company on presentation to the American Trust Company.

The defendant contends that it had no authority to enter into a guaranty with the plaintiff and that the contract of guaranty is *ultra vires* the trust company. This defence is expressly pleaded in the answer. In 1920 when the contract in question was entered into, the law regulating the powers and obligations of trust companies in this Commonwealth was embodied in R. L. c. 116, as amended. The relevant sections then in force are substantially the same as are now found in G. L. c. 172, § 36, which provides in part that a trust company may "accept for payment at a future date drafts and bills of exchange drawn upon it, and issue letters of credit authorizing holders thereof to draw drafts upon it, or its correspondents, at sight or on time . . . ." By § 37

of the same chapter a trust company may "accept drafts or bills of exchange drawn upon it and growing out of transactions involving the import or export of goods, having not more than six months' sight to run" subject to certain defined limitations. "A trust company is clothed with whatever further incidental powers fairly may be implied from those expressly conferred and such as are reasonably necessary to enable it fully to exercise those powers according to common commercial and banking customs and usages." *Nowell* v. *Equitable Trust Co.* 249 Mass. 585, 598.

It is plain that the powers of the defendant company are regulated and limited as above set forth, and that it had no power to enter into a contract of guaranty such as is contained in the letter of July 15, 1920. It was said in *Nowell* v. *Equitable Trust Co., supra,* at page 599: "This contract grew out of transactions relating to the import of goods. But it cannot by any stretch of definition or description be rightly termed a draft or bill of exchange. A guaranty of the financial obligations incurred by an importer to another banker is different in kind from the business described in the sections delimiting the corporate powers of a trust company. It is not fairly incidental to the powers there conferred. All these considerations lead us to the conclusion that this contract of guaranty was *ultra vires* the trust company."

There is no evidence to show that the defendant trust company has received anything of value from the plaintiff, or that it has obtained any benefit or advantage which would render it inequitable to rely upon the defence of *ultra vires* within the principle enunciated in *Nims* v. *Mount Hermon Boys' School,* 160 Mass. 177, 179, 180, and affirmed in *Nowell* v. *Equitable Trust Co., supra,* and cases there collected at pages 601, 602, 603. The defendant's ninety-sixth and ninety-seventh requests in substance should have been given.

The plaintiff does not rely upon an implied contract growing out of any gain or advantage to the defendant as a result of its guaranty. Its cause of action is brought essentially on the express contract, which we construe to be a contract of guaranty and not a letter of credit, as the plaintiff contends. In view of the conclusion reached, we need not consider

whether the letter if construed as a letter of credit, could have been issued by the defendant under § 36.   It follows that the defendant's motion for a directed verdict as to counts 13, 14, 15 and 16 should have been allowed, and the exception to its denial must be sustained.   It is therefore unnecessary to consider the defendant's exceptions to the admission and exclusion of evidence, to the large number of exceptions to refusals to rule, and to portions of the charge.

All the plaintiff's exceptions in effect are disposed of by what has been said in the consideration of the defendant's exceptions.   The exception to the order of the trial judge, directing a verdict for the defendant on each of the first twelve counts, for reasons already stated cannot be sustained. As the plaintiff was not entitled to recover under the guaranty for the balance of freight, it is immaterial whether, as the plaintiff argues, demurrage charges incurred in Africa were included in the term freight.   The plaintiff's exception to the exclusion of evidence contained in the correspondence between the parties and their attorneys to prove that demand on the defendant had been made on or before April 21, 1921, and on Palmer and Parker Company for payment of the principal sums for which the drafts mentioned in counts one to four, both inclusive, and counts nine to twelve, both inclusive, were drawn, cannot be sustained, as the question of interest has become immaterial.   All other questions raised by the plaintiff's exceptions must be overruled as they are disposed of by the conclusion that the contract entered into by the defendant was in legal effect a guaranty upon which the defendant is not liable.

It follows that the order overruling the answer in abatement is affirmed, and that the defendant's exceptions to the refusal of the trial judge to direct a verdict in its favor on counts 13, 14, 15 and 16 are sustained.   The plaintiff's exceptions are overruled.

*So ordered.*